UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOHN THIBODEAUX, AMY THIBODEAUX GABRIELLE THIBODEAUX, AND EMILY THIBODEAUX : : : : | Civil Action 6:18-00501 |
| | Judge: |
| VERSUS : : | |
| J.M. DRILLING, LLC, ADMIRAL INSURANCE COMPANY, ROCKHILL INSURANCE COMPANY, AND BELLSOUTH TELECOMMUNICATIONS, LLC : : : : : | Magistrate: |

**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER**

NOW INTO COURT, through undersigned counsel, comes Defendant, ROCKHILL INSURANCE COMPANY (hereinafter sometimes referred to as "Rockhill"), who respectfully offers this Reply to the *Opposition to Motion to Transfer* filed by Plaintiffs (Doc. 18).

**MAY IT PLEASE THE COURT:**

Courts in the Fifth Circuit generally follow a "first-filed" rule in deciding which court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits. *909 Corp. v. Village of Bolingbrook*, 741 F. Supp 1290 (S.D. Texas August 15, 1990). The "first filed" rule is a discretionary doctrine, the aim of which is to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Bedrock Logistics v. Braintree Laboratories*, 2017 WL 1547013 (N.D. Texas April 28, 2017).

### A. "Substantial Overlap" is Present Between the Two Declaratory Actions

The "first-to-file" rule provides that when related cases are pending in two district courts, the court with the later-filed action can refuse to hear the case, if the issues raised by both cases "substantially overlap." *Bedrock Logistics v. Braintree Laboratories*, 2017 WL 1547013 (N.D. Texas April 28, 2017). In their Opposition Memorandum, the Plaintiffs claim that substantial overlap is not present between the two declaratory actions because the Tennessee action does not include all parties that were involved in the state tort action, and that the parties not included in the Tennessee action have an interest in the outcome of the decision as to whether the Rockhill policy applies in the circumstances giving rise to the tort action.

However, the "substantial overlap" factor of the "first filed" rule does not require that both actions have identical parties. *Save Power v. Syntek Finance*, 121 F.3d 947 (5th Cir. 1997). In order for the rule to apply to transfer or dismiss a case, the two pending actions must be so duplicative or they must involve substantially similar issues such that one court should decide the subject matter of both actions. *Texas Association of Realtors v. PDFillers*, 2017 WL 3821690 (W.D. Texas Aug. 30, 2017). Courts have noted that a substantial relationship exists between two suits where the issues, though not identical, are similar enough that the cases would be consolidated if filed in the same court. *Id.*

The fact that all parties who have an interest in the resolution of the two declaratory actions were not named in the first-filed action does not preclude the application of the "first-filed" rule. Both the Louisiana and the Tennessee declaratory

2

actions involve the parties to the contract in question, J.M. Drilling, LLC as the insured, and Rockhill as the insurer, both actions seek resolution as to the same question of coverage under the factual circumstances presented, and a decision of either court will affect all interested parties in the same manner. Therefore, "substantial overlap" exists between the two declaratory actions so that application of the "first-filed" rule is appropriate in the above captioned matter.

### B. The Thibodeaux Plaintiffs Are Not Necessary and Indispensable Parties to the Contract Dispute

Plaintiffs assert in their Opposition Memorandum that they are indispensable parties to a declaratory action between Rockhill and J.M. Drilling, LLC because they have an interest in the decision as so far as it will affect from whom they can recover on their judgment for damages from the Fifteenth Judicial District Court of Louisiana. However, a party does not become indispensable to a case simply due to having an interest in the outcome of the decision.

In support of their argument, Plaintiffs turn to the 1974 Fifth Circuit decision *Ranger Insurance Company v. United Housing of New Mexico, Inc.* 488 F.2d 682 (5th Cir. 1974). In that case, the insurer, Ranger Insurance Company ("Ranger"), brought a declaratory judgment action in federal district court under diversity jurisdiction against its insured, United Housing of New Mexico ("United Housing"), seeking to establish that, under the coverage provision of its insurance contract, Ranger was not liable for claims arising from the crash of a plane owned by United Housing. *Id.* at 682. The district court exercised its discretion not to hear the declaratory judgment action and the appellate

court upheld that decision. *Id.* at 683. In making its decision, the court stated that it felt that the third-party claimants did have some interest in the outcome of the declaratory action, but joining them in the federal action would destroy the diversity needed for federal jurisdiction. *Id.* at 683 – 84*.* Therefore the claimants had no federal procedural vehicle by which to protect their interests in the pending action, and so the court declined to exercise jurisdiction. *Id.*

However, the Fifth Circuit revisited this same issue in its 2017 decision *Federal Insurance Company v. Singer River Health System*, 850 F.3d 187 (5th Cir. 2017). In this case, the insurer, Federal Insurance Company ("Federal"), brought declaratory action in federal court against its collective insureds ("Medical Insureds") based upon diversity jurisdiction seeking judgment that it did not have a duty under health care portfolio insurance policy to defend or indemnify insured community hospitals in underlying lawsuits alleging underfunding of retirement plan and trusts. *Id.* at 191 – 93. The district court issued a Rule 54(b) partial final judgment from with both parties appealed raising various issues. *Id.* at 191 – 194. One issue raised by the Medical Insureds on appeal is that the district court erred in denying their request for joinder of all third-party claimants/plaintiffs from the underlying lawsuits under Federal Rule of Civil Procedure 19(a). *Id.* at 200.

The Fifth Circuit declined to accept the argument that the third-party claimants were necessary parties stating that:

> Turning to the joinder of the plaintiffs in the [underlying lawsuits], Medical Insureds maintain [the third-party claimants'] financial interest in the outcome of coverage disputes makes them required parties under Rule 19(a)(1)(B)(i). Although we have determined that insurance plaintiffs may

4

> fall under that subsection, *see Ranger Ins. Co. v. United Hous. of N.M. Inc.*, 488 F.2d 682, 683 & n.3 (5th Cir. 1974), that case is distinguishable. There, the plaintiffs could not intervene in the federal action because their presence would divest the court of diversity jurisdiction. *Id.* at 682 – 83. By contract, here, the plaintiffs can intervene because they are diverse. Accordingly, Plaintiffs have means to protect their interests. . . . Moreover, as the district court noted, the plaintiffs have the same interest as Medical Insureds – maximizing coverage – so, like the additional insured, their interests are protected by Medical Insureds' vigorous litigation in the coverage dispute. . . . Furthermore, as the district court noted, both the additional insureds and plaintiff in the underlying [lawsuits] had not moved to intervene.
>
> *Id.* at 201.

The case at bar procedurally aligns with the *Federal* case better than it does with the *Ranger* case. The Thibodeaux Plaintiffs were aware of the declaratory action filed by Rockhill in the Tennessee district court as noted by the fact that they listed it as a collateral proceeding before their *Complaint for Declaratory Judgment*. (Doc. 1, pg. 1). However, despite being aware of this fact the Thibodeaux Plaintiffs declined to intervene into the declaratory action filed in the Tennessee district court. Their intervention would both allow them an opportunity to be a part of the proceedings to protect their interest, and would not destroy the diversity jurisdiction that the Tennessee court is exercising over the Rockhill declaratory action. Their failure to intervene does not now require this Honorable Court to exercise its power to resolve a dispute that was first vested in, and is already being addressed by a sister court.

## C. The "Compelling Circumstances" Exception to the "First-Filed" Rule is Not Applicable In This Case

In their Opposition Memorandum, Plaintiffs claim that there are present in the above captioned matter "compelling circumstances" which prevent the court from

5

following the "first-filed" rule, but they are incorrect in their application of that exception to the circumstances of the two pending declaratory actions. The source of this confusion is that the cases cited by the Plaintiffs address a pattern of procedural circumstances that are distinguishable from those surrounding the two declaratory actions at bar. In this case, Rockhill filed its declaratory action in the Tennessee court almost three years after the civil action for damages against J.M. Drilling, LLC was filed by the Thibodeauxs, and so the Tennessee declaratory action in no way kept the Thibodeauxs from pursuing their civil action within the forum of their choosing. Whereas the cases cited by Plaintiffs deal with a declaratory action being filed before a civil action for damages in order to select a specific forum and/or avoid liability in the civil action for damages.

For example, in *Northwest Airlines, Inc. v. American Airlines, Inc.*, Northwest Airlines brought action against American Airlines seeking declaratory judgment that hiring of competitor's at-will employees was lawful competition in industry. 989 F.2d 1002 (8th Cir. 1993). The dispute originated from the fact that Northwest had been recruiting employees directly from the ranks of American Airlines. 989 F.2d at 1003. Upon learning of this maneuver, counsel for American Airlines sent correspondence to counsel for Northwest Airlines advising of American Airlines' potential legal claims for tortious interference with respect to the nine American Airlines employees that were hired by Northwest Airlines as well as American Airlines' willingness to pursue legal action if necessary. *Id.* On June 6, 1991, counsel for Northwest Airlines responded stating that he did not believe Northwest Airline to be liable for any tortious interference by means of the hiring practices. *Id.* Then, on July 17, 1991, Northwest Airlines filed suit

in the United States District Court for the District of Minnesota seeking declaratory relief. *Id.* On August 30, 1991, American Airlines filed suit against Northwest in the United States District Court for the Northern District of Texas seeking permanent injunctive relief and damages for unfair competition as well as tortious interference with contractual relationships. *Id.* at 1003 – 04.

The *Northwest Airlines v. American Airlines* decision went on to explain that "[t]he prevailing standard is that in the absence of 'compelling circumstances' the 'first-filed' rule should apply" and that a district court does not abuse its discretion in applying the "first-filed" rule to enjoin a second action absent (1) bad faith by the declaratory plaintiff in filing first, (2) a race to the court house to preempt suit by an allegedly injured party, or (3) a showing of an undue burden created by proceeding in the first filed forum. 989 F.2d 1002. None of these situations are present between the Louisiana and Tennessee declaratory actions.

Plaintiffs brought suit in the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana on August 25, 2015, against J.M. Drilling, LLC and other defendants. On March 26, 2018, nearly three years following the initiation of the tort suit, Rockhill filed suit in the United States District Court for the Western District of Tennessee against its insured J.M. Drilling, LLC seeking a declaratory judgment stating that the Rockhill excess liability policy does not afford coverage under the factual circumstance that gave rise to the Thibodeaux tort suit. Final judgment in the tort suit was executed on April 6, 2018. However, as opposed to intervening into the first filed declaratory action as discussed in Section B, the Thibodeauxs instead initiated the above captioned declaratory action on April 12, 2016, also seeking declaratory

7

judgement as to whether in the Rockhill excess liability policy prevented coverage under the factual circumstances giving rise to the tort suit.

Therefore, the filing of the declaratory action by Rockhill in the Western District of Tennessee was not filed in bad faith as it was filed *after* the civil action for damages was initiated. Also, the filing of the declaratory action by Rockhill in the Western District of Tennessee was not a "race to the court house" to prevent the Plaintiff from pursing their civil action for damages against the allegedly liable party, J.M. Drilling, LLC, within their venue of choice as evidenced by the fact that the first filed declaratory action was filed almost three years following the filing of the civil action for damages. And no undue burden will arise from proceeding in the Tennessee court, which will be further explained in the following section.

**D. The Section 1404 Factors Do Not Dictate Disregarding the "First Filed" Rule**

In their Opposition Memorandum, Plaintiffs assert that the factors associated with 28 U.S.C. § 1404 including the convenience of evidence and witnesses weighs in favor of this Honorable Court hearing the declaratory action because "all the witnesses and evidence crucial as to how the accident happened and liability (coverage determination) are in Louisiana, not Tennessee." (Doc. 18, pg. 14 – 15). However, what Plaintiffs fail to realize is that the crux of both declaratory actions is that of contractual interpretation as opposed to a finding of liability. Accordingly, it is unlikely that resolution of either matter would require the testimony of the Thibodeauxs, or any evidence as to the cause and extent of Mr. John Thibodeaux's injuries.

In support of their argument that the section 1404 factors dictate that this Honorable Court deny the *Motion to Transfer*, the Plaintiffs cite in their Opposition Memorandum the *Braintree* cases. However, these two cases are procedurally distinguishable from the circumstances giving rise to these two declaratory actions for the same reasons as provided in Section C of this brief.

The *Braintree* cases, just like those cited in Section C, involve a potential defendant filing suit shortly following notice from an allegedly injured party of possible legal claims presumably in order to secure a more favorable forum for litigation and/or avoid liability, which as previously discussed was not the case with Rockhill's declaratory action. Furthermore, the *Braintree* cases are distinguishable in that the *Braintree* courts were grappling with two civil actions for damages both of which would presumably require the presentation of extensive testimony and documentary evidence.

In contrast, the declaratory actions present in both this court and the Tennessee court address only the issue of contract interpretation and therefore, do not involve the same testimony and evidentiary presentation as that of a civil action for damages. Accordingly, an application of the typical factors considered in a section 1404 motion to transfer does not in this case weigh in favor of disregarding the "first filed" rule in deciding which forum should decide the contractual dispute between Rockhill and J.M. Drilling, LLC.

## CONCLUSION

The crux of this *Defendant's Motion to Transfer* is the issue of which court should resolve the contract dispute between Rockhill Insurance Company and J.M. Drilling,

9

LLC. Although the tort suit did spark the dispute it is not the overarching proceeding to which all other tangential suits must attach. In their Opposition Memorandum, the Plaintiffs offer arguments as to why this Honorable Court should disregard the jurisprudential "first-filed" rule all based upon a confusion of the procedural circumstances surround this matter and those of the cases cited.

The fact of the matter is that the Thibodeaux Plaintiffs knew about the declaratory action filed by Rockhill in the Tennessee court, but elected not to intervene. Instead, the Plaintiffs filed the above captioned matter in order to pull Rockhill into a forum that is local and possibly friendlier to them, and in doing so have attempted to present the efforts of Rockhill to protect its own interest as a manipulation of the judicial process.

The granting of *Defendant's Motion to Transfer* and staying the proceedings in the above captioned matter does not leave the Thibodeaux Plaintiffs without the ability to protect their interests in the contract dispute. The jurisprudence states that two courts need not hear the same issue through two different lawsuits. The Western District of Tennessee, Eastern Division is perfectly capable of resolving the contract dispute, and any interested party such as the Thibodeaux Plaintiffs have the ability to petition that court for intervention into the suit.

**WHEREFORE**, Defendant, ROCKHILL INSURANCE COMPANY, respectfully asks that this Honorable Court grant *Defendant's Motion to Transfer* and stay all proceedings in the above captioned matter until the West District of Tennessee, Eastern Division can adjudge whether to consolidate the actions.

*Signature of following page*

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully Submitted, |
| I HEREBY CERTIFY that on the 14th day of June 2018 I filed the foregoing *Reply to Plaintiffs' Opposition to Motion to Transfer* with the CM/ECF system through which a copy was provided to all counsel of record. | PERKINS & ASSOCIATES, LLC:<br><br>By:__/s/ Mark A. Perkins_____<br>Mark A. Perkins, #18529<br>Cody Grosshart, #37143<br>401 Market St., Suite 900<br>Shreveport, LA 71105<br>T: (318) 222-2426<br>F: (318) 222-0456 |

   __/s/_ Mark A. Perkins__