**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| JOHN THIBODEAUX, ET AL.,<br><br>V.<br><br>J.M. DRILLING, LLC, ADMIRAL INSURANCE COMPANY, ROCKHILL INSURANCE COMPANY, AND BELLSOUTH TELECOMMUNICATIONS LLC | ) | NO. 6:18-CV-501 (LEAD) |
| ROCKHILL INSURANCE COMPANY,<br><br>V.<br><br>J.M. DRILLING, LLC | ) | NO. 6:18-CV-1414 (MEMBER)<br><br>JUDGE ROBERT R. SUMMERHAYS<br>MAGISTRATE JUDGE CAROL B. WHITEHURST |

**ROCKHILL INSURANCE COMPANY'S OBJECTIONS TO REPORT AND RECOMMENDATION [DOC. 87] AND TO ADMIRAL INSURANCE COMPANY'S MOTION TO DISMISS [DOC. 54]**

Pursuant to the Court's February 11, 2019 Report and Recommendation ("Report") [Doc. 87], Rockhill Insurance Company ("Rockhill") hereby submits its Objection to the Report and Recommendation [Doc. 87] and Admiral Insurance Company's ("Admiral") Motion to Dismiss [Doc. 54], and in support thereof states as follows:

## I. INTRODUCTION

This matter is an insurance coverage dispute arising out of an underlying lawsuit that was filed against JM Drilling, LLC ("JM Drilling"), which alleges that the underlying claimant fell into a hole that was allegedly created by JM Drilling's negligent excavation. Admiral Insurance

Company ("Admiral") issued a primary insurance policy to JM Drilling, and Rockhill issued an excess insurance policy to JM Drilling.

The core issue raised by Admiral's motion to dismiss is whether a case and controversy exists as to Admiral, given that: (1) the Thibodeaux Plaintiffs in this Action seek a declaration of coverage only under the Rockhill Policy, and (2) Admiral entered into a settlement agreement under which the Thibodeaux Plaintiffs and JM Drilling released Admiral of any further coverage obligations, in exchange for Admiral's payment of $1 million.

As set forth below, to the extent Admiral's Motion to Dismiss may have had *any* merit at the time the motion was filed, that is certainly no longer the case. Since Admiral filed its Motion to Dismiss (and since the deadline to oppose that motion passed), the Thibodeaux Plaintiffs, JM Drilling, and Rockhill have all alleged claims and defenses that clearly do create a case and controversy with respect to Admiral. Specifically, the Thibodeaux Plaintiffs and JM Drilling have supplemented their prior claims to allege that Rockhill now has an obligation to defend JM Drilling. In response to those new claims—in addition to re-asserting its coverage defenses—Rockhill has now taken the position that even if the Rockhill Policy did provide coverage, Rockhill's obligation to defend is not triggered because a primary carrier continues to have an obligation to defend its insured through the underlying appeal—and JM Drilling and Admiral cannot, through their private agreement, transfer this obligation to the excess carrier (Rockhill). In addition, Rockhill also contends that the Rockhill Policy would attach only upon payment of the full policy limits of the underlying Admiral Policy ($2 million). Because Admiral has allegedly paid only $1 million, Rockhill has no obligation to defend JM Drilling, and Rockhill can only be required to indemnify in excess of $2 million.

These claims and defenses require the Court to determine what, if any, immediate defense and indemnity obligations exist with respect to JM Drilling. Indeed, if the Court agrees with Rockhill's points above, then Admiral or JM Drilling have to pay for the underlying appeal and have to pay an additional $1 million before the Rockhill Policy can attach. Therefore, a case and controversy exists with respect to Admiral, and this Court should therefore sustain this objection and deny Admiral's Motion to Dismiss. Alternatively, the issues raised herein should be set for briefing and argument by the parties.

## BACKGROUND

### A. The Insurance Policies

Admiral issued Policy No. CA000019278-02 to JM Drilling for the policy period of May 2, 2015 to May 2, 2016, with policy limits of $1 million per occurrence and $2 million in the aggregate ("Admiral Policy"). (Thibodeaux Compl. Ex. 10, at 4, ECF Doc. No. 1-10.) Rockhill issued Policy No. FF013178-00 to JM Drilling for the policy period of May 2, 2015 to May 2, 2016, with policy limits of $5 million per occurrence and in the aggregate ("Rockhill Policy"). (Thibodeaux Compl. Ex. 11, at 1, ECF Doc. No. 1-11.) The Rockhill Policy was issued in Tennessee. (*See id.*)

The Rockhill Policy is excess of the Admiral Policy. (*Id.* at 5.) Section V.A of the Rockhill Policy provides that Rockhill will defend JM Drilling only if "the aggregate Limit of Liability of the applicable Scheduled Underlying Policy has been exhausted by payment of claims; ***provided there is no duty to defend under any Underlying Policy***." (*Id.* at 13.) (emphasis added). In addition, Section I.A of the Rockhill Policy provides as follows:

> We will pay, on behalf of the insured, the **ultimate net loss** in excess of the amount payable under the terms of any Underlying Insurance as stated in the Schedule of Underlying Insurance, that the Insured becomes legally obligated to

pay as damages because of injury or damage to which this insurance applies, but only after the Underlying Insurance has been exhausted by payment in full.

(*Id.* at 6.) (emphasis in original).

**B. The Underlying Lawsuit**

On August 24, 2015, the Thibodeaux Plaintiffs filed the Underlying Lawsuit against, among others, JM Drilling and Bellsouth Telecommunications, LLC ("Bellsouth"). (Thibodeaux Compl. Ex. 2, at 1, ECF Doc. No. 1-2.) The operative complaint in the Underlying Lawsuit alleged that JM Drilling performed negligent excavation work in Lafayette, Louisiana, which allegedly resulted in John Thibodeaux falling into a hole that was caused by JM Drilling's negligent work. (*See* Thibodeaux Compl., at ¶ 13, ECF Doc. No. 1.) Specifically, the Thibodeaux Plaintiffs allege that in February of 2015, JM Drilling allegedly struck a sewer line during the excavation and allegedly did not tell the utility owner. (*Id.*) The Plaintiffs further allege that on June 9, 2015, John Thibodeaux fell into the subject hole, and that the hole was allegedly created by the washed out soil from where JM Drilling had excavated. (Thibodeaux Compl. Ex. 6, at 2-3, ECF Doc. No. 1-6.)

Admiral, as JM Drilling's primary carrier, agreed to defend JM Drilling in the Underlying Lawsuit without a reservation of rights. (*See* JM Drilling Countercl., at ¶ 15, ECF Doc. No. 70.) On March 29, 2018, the jury in the Underlying Lawsuit awarded approximately $3.7 million in damages against JM Drilling. (Thibodeaux Compl., at ¶ 17, ECF Doc. No. 1.) JM Drilling appealed the judgment in the Underlying Lawsuit, which is currently pending in the Louisiana Court of Appeals for the Third Circuit, No. 18-676 ("underlying appeal"). (*See* JM Drilling Countercl., at ¶ 18, ECF Doc. No. 70.)

C. **The Instant Declaratory Judgment Action and Admiral's Motion to Dismiss**

Prior to the underlying appeal, Rockhill and the Thibodeaux Plaintiffs filed their own competing coverage actions. On March 26, 2018, Rockhill filed its complaint against JM Drilling, in the Western District of Tennessee ("Tennessee Action"), seeking a declaration that Rockhill owes no coverage to JM Drilling in connection with the Underlying Lawsuit because: (1) the Subsidence Exclusion in the Rockhill Policy bars coverage for the Underlying Lawsuit, (2) the Residential Construction Exclusion in the Rockhill Policy bars coverage for the Underlying Lawsuit, (3) the Underlying Lawsuit does not involve an "occurrence," as that term is defined in the Underlying Lawsuit, and (4) JM Drilling's breach of the Policy's notice provision precludes coverage for the Underlying Lawsuit. (*See* Rockhill Compl., at ¶¶ 46-49, ECF Doc. No. 18-2.)

On April 12, 2018, the Thibodeaux Plaintiffs filed their complaint in this Action against JM Drilling, Admiral, Rockhill, and Bellsouth Telecommunications, LLC, seeking a declaration that Rockhill owes coverage to JM Drilling for the Underlying Lawsuit. (*See* Thibodeaux Compl., ECF Doc. No. 1.)

On October 26, 2018, Admiral filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (*See* Mot. Dismiss., ECF Doc. No. 54.) In support of its Motion to Dismiss, Admiral argues that there is no case and controversy between the Thibodeaux Plaintiffs and Admiral because: (1) the Thibodeaux Plaintiffs' complaint only seeks a declaration of coverage under the Rockhill Policy, and (2) Admiral entered into a settlement agreement with the Thibodeaux Plaintiffs and JM Drilling, under which the Thibodeaux Plaintiffs and JM Drilling stipulated that Admiral fully exhausted its obligations under the Admiral Policy, in exchange for Admiral's payment of $1 million. (Memo. Supp. Mot. Dismiss, at 5, ECF Doc. No. 54-1.)

Pursuant to Local Rule 7.4, Rockhill had until November 16, 2018 to file a response to Admiral's Motion to Dismiss. Rockhill, however, did not file a response prior to that deadline because, as set forth below, the issues that create a case and controversy with respect to Admiral did not arise until well after November 16th. Specifically, on November 26, 2018, the Tennessee Action was transferred to, and consolidated with, the instant Action. (*See* Docket Entry No. 62.) Since then, the Thibodeaux Plaintiffs, JM Drilling, and Rockhill have asserted ***new*** allegations, claims, and defenses that concern Admiral's immediate defense and indemnity obligations:

- On November 29, 2018, JM Drilling filed a counter-claim against Rockhill, alleging for the first time that Admiral paid its $1 million limits, and that Rockhill therefore has an obligation to pay JM Drilling's defense costs in the underlying appeal. (JM Drilling Countercl., at ¶ 18, ECF Doc. No. 70.)

- On December 14, 2018, JM Drilling filed an amended cross-claim that included the allegations set forth in its November 29, 2018 counter-claim. (*See* JM Drilling Am. Cross-cl., at ¶ 18, ECF Doc. No. 76.)

- On December 14, 2018, the Thibodeaux Plaintiffs amended their complaint to also allege (for the first time) that Admiral paid its $1 million limits, and that Rockhill therefore has an obligation to pay JM Drilling's defense costs in the underlying appeal. (Thibodeaux Am. Compl., at ¶¶ 38-40, ECF No. 75.)

- On January 15, 2019, Rockhill filed its answers and affirmative defenses to JM Drilling's counter-claim, JM Drilling's amended cross-claim, and the Thibodeaux Plaintiffs' amended complaint. (*See* ECF Doc. No. 82; ECF Doc. No. 83; ECF Doc. No. 84.) In those answers and affirmative defenses, Rockhill re-asserted the claims set forth in its complaint. In addition, Rockhill also alleged and asserted the following alternative defenses: (1) Rockhill can have no obligation to defend JM Drilling in the underlying appeal, because Admiral has a continuing obligation to defend JM Drilling through the underlying appeal; and (2) the Rockhill Policy cannot attach until the underlying limits of the Admiral Policy ($2 million) have been exhausted by payment. (ECF Doc. No. 82, at 11-12; ECF Doc. No. 83, at 2-5; ECF Doc. No. 84, at 4-6.)

## II. ARGUMENT

Pursuant to Article III §2 of the Constitution, federal courts have jurisdiction to hear only "cases" and controversies. *Atlantic Cas. Ins. Co. v. Ramirez*, 651 F. Supp. 2d 669, 673 (5th Cir. 2001). A controversy exists "where the facts alleged show that there is a substantial controversy,

between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment. *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 319 (5th Cir. 2006). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

As set forth below, the parties in this Action have alleged claims and defenses that require this Court to determine what, if any, immediate and additional defense and indemnity obligations Admiral has with respect to JM Drilling. Accordingly, a case and controversy exists with respect to Admiral, and this Court should therefore deny Admiral's Motion to Dismiss.

**A. Rockhill's Obligation To Defend JM Drilling Is Not Triggered, Thus There Is A New Issue Among the Parties As To Whether Admiral Must Continue Paying for JM Drilling's Ongoing Defense in the Underlying Appeal.**

The Rockhill Policy is excess of the Admiral Policy. (Thibodeaux Compl. Ex. 11, at 5, ECF Doc. No. 1-11.) The Rockhill Policy states that Rockhill will defend JM Drilling only if "the aggregate Limit of Liability of the applicable Scheduled Underlying Policy has been exhausted by payment of claims; ***provided there is no duty to defend under any Underlying Policy***." (*Id.* at 13.) (emphasis added). Therefore, to the extent Rockhill can have any obligation to defend JM Drilling, such an obligation can only arise if the full policy limits of the Admiral Policy have been properly exhausted and if there is no duty to defend under the Admiral Policy. (*See id.* at 5, 13.)

Here, Admiral's payment of the $1 million did not, by itself, extinguish Admiral's continuing duty to defend JM Drilling in the underlying appeal. Indeed, the majority of jurisdictions addressing a primary insurer's post-trial obligations have held that a primary carrier—such as Admiral in this case—has a duty to defend its named insured through the

underlying appeal. *See, e.g.*, *MedMarc Cas. Ins. Co. v. Forest Healthcare, Inc.*, 199 S.W.3d 58, 62 (Ark. 2004) ("when the insurance carrier assumes the defense of its insured, it is obligated to appeal when there are reasonable grounds to believe that the insured's interests will be furthered"); *Associated Automotive Inc. v. Acceptance Indem. Ins. Co.*, 705 F. Supp. 2d 714, 724 (S.D. Tex. 2010) (citing numerous cases for the proposition that "courts in jurisdictions across the country have held that, absent an express provision in the policy to the contrary, an insurer's duty to defend encompasses a duty to appeal an adverse judgment against the insured as long as there are reasonable grounds to believe that the insured's interest would be furthered by the appeal.").

Admiral contends that it no longer has an obligation to defend JM Drilling in the Underlying Lawsuit, because the Thibodeaux Plaintiffs and JM Drilling agreed to release Admiral of any coverage obligations in exchange for its payment of $1 million. (Memo. Supp. Mot. Dismiss., at 5, ECF Doc. No. 54-1.) And the Thibodeaux Plaintiffs and JM Drilling now contend in their pleadings that—as a result of this agreement—Rockhill has an obligation to defend JM Drilling in the underlying appeal. (JM Drilling Countercl., at ¶ 18, ECF Doc. No. 70; Thibodeaux Am. Compl., at ¶¶ 38-40, ECF No. 75; JM Drilling Am. Cross-cl., at ¶ 18, ECF Doc. No. 76.) This conclusion, however, is premised on the misguided idea that a named insured (JM Drilling) and a primary insurer (Admiral) can agree to transfer the primary insurer's (Admiral's) defense obligations to the excess insurer (Rockhill) without proper exhaustion of the underlying insurer's defense and indemnity obligations. There simply is no Tennessee case law supporting this premise. Indeed, such a conclusion is inconsistent with the terms and conditions of the Rockhill Policy—which requires complete underlying exhaustion before Rockhill's obligations can attach—and is inconsistent with well-settled law that such policy language "require[s] that

[the] primary insurer . . . exhaust its limit of liability by actual payment of claims before [the excess insurer] would be obliged to contribute to indemnity or defense costs." *See Comerica Inc. v. Zurich American Ins. Co.*, 498 F. Supp. 2d 1019, 1034 (E.D. Mich. 2007).

Accordingly, consistent with the applicable case law discussed above, Rockhill submits that Rockhill cannot have an obligation to defend JM Drilling in the underlying appeal, because Admiral had a continuing obligation to defend JM Drilling in the underlying appeal—and Admiral's settlement agreement does not transfer such obligation to Rockhill. (*See* ECF Doc. No. 82, at 11; ECF Doc. No. 83, at 3; ECF Doc. No. 84, at 6.) If this Court agrees, then Admiral or JM Drilling has to pay for JM Drilling's defense costs in the underlying appeal. As a result, a case and controversy exists with respect to whether Admiral has any defense obligations to JM Drilling.

**B. The Limits Of The Underlying Admiral Policy May Not Have Been Properly Exhausted, Thus There Is An Issue As To Whether Admiral Has Any Obligation to Pay Additional Limits.**

The Rockhill Policy is excess of the Admiral Policy and can attach only upon the full and proper exhaustion of the Admiral Policy. (Thibodeaux Compl. Ex. 11, at 5, ECF Doc. No. 1.) Specifically, the Rockhill Policy provides as follows:

> We will pay, on behalf of the insured, the **ultimate net loss** in excess of the amount payable under the terms of any Underlying Insurance as stated in the Schedule of Underlying Insurance, that the Insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies, but only after the Underlying Insurance has been exhausted by payment in full.

(*Id.* at 6) (emphasis in original).

Accordingly, even if the Rockhill Policy provided coverage for the Underlying Lawsuit (which it does not), Rockhill can have no obligation to JM Drilling until the limits of the Admiral Policy have been exhausted by payment in full. In fact, courts interpreting similar policy

language have long settled that, if the primary carrier pays less than its full policy limits, then the excess coverage is released. *See, e.g.*, *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 198 (Cal. Ct. App. 2008) (holding that, because the insured settled with primary insurers for less than the full amount of the primary policy limits, the insured could not recover under the excess policy limits because the exhaustion clause required the primary carrier to pay no less than the underlying policy limits, thus the excess insurer's obligations did not arise); *Comerica Inc.*, 498 F. Supp. 2d at 1034 (holding that "the unambiguous language of the excess policy . . . required that [the] primary insurer . . . exhaust its limit of liability by actual payment of claims before [the excess insurer] would be obliged to contribute to indemnity or defense costs.").

In support of its Motion to Dismiss, Admiral represents that the Admiral Policy provides a liability limit of $1 million, and that Admiral has exhausted its indemnity obligation to JM Drilling by payment of $1 million. (Memo. Supp. Mot. Dismiss, at 2, ECF Doc. No. 54-1.) Admiral's Memorandum, however, fails to explain that the Admiral Policy's limits of liability are actually $1 million ***per occurrence*** with a ***$2 million aggregate***. (Thibodeaux Compl. Ex. 10, at 4, ECF Doc. No. 1-10.) This is particularly important because the policyholder in this matter, JM Drilling, contends that two separate and independent causative occurrences resulted in the underlying injuries: JM Drilling's alleged negligent drilling and JM Drilling's alleged negligent failure to report that it struck and damaged a sewer pipe. (Thibodeaux Compl., at ¶¶ 26-30, ECF Doc. No. 1.) JM Drilling's position in this matter therefore implicates two per-occurrence limits ($2 million).

Accordingly, Rockhill takes the position that, if the Court finds that JM Drilling's arguments regarding the causative occurrences are legally valid, then this matter involves two $1

million per-occurrence limits. (*See* ECF Doc. No. 82, at 12; ECF Doc. No. 83, at 5; ECF Doc. No. 84, at 6.) As a result, the Rockhill Policy cannot attach until the total underlying limits of the Admiral Policy ($2 million) have been exhausted by payment. Because Admiral has allegedly paid only one $1 million, Rockhill can have no obligation to defend or indemnify JM Drilling at this time. Moreover, to the extent Rockhill can have any indemnity obligation, Rockhill can only have an obligation to indemnify in excess of $2 million.

As a result, if the Court agrees with Rockhill's position on this issue, Admiral or JM Drilling have to pay the remaining $1 million before the Rockhill Policy can attach. Accordingly, a case and controversy exists with respect to Admiral, and the Court should therefore deny Admiral's Motion to Dismiss.

## III. CONCLUSION

WHEREFORE, for the reasons set forth above, Rockhill Insurance Company prays that this Court sustain this objection and deny Admiral Insurance Company's Motion to Dismiss. Alternatively, Rockhill prays that the Court set the issues for additional briefing and argument.

Respectfully submitted,

JUNEAU DAVID, APLC

/s/ *Robert J. David, Jr.*
ROBERT J. DAVID, JR. (#21554)
rjd@juneaudavid.com
1018 Harding Street, Suite 202
Post Office Drawer 51268
Lafayette, LA 70505-1268
Ph: (337) 269-0052
Fax: (337) 269-0061

BATES CAREY LLP

ADAM H. FLEISCHER
AFleischer@BatesCarey.com
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Ph: (312)-762-3130
Fax: (312) 762-3100

*Counsel for Rockhill Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all known counsel of record who are participants.

*/s/ Robert J. David, Jr.*
ROBERT J. DAVID, JR.