UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOHN THIBODEAUX, ET AL | NO.:  6:18-CV-00501-RRS-CBW(LEAD) |
| | NO.:  6:18-CV-01414-RRS-CBW (MEMBER) |
| VERSUS | |
| | JUDGE ROBERT R. SUMMERHAYS |
| J. M. DRILLING, LLC, ET AL | |
| | MAGISTRATE CAROL B. WHITEHURST |

**THIRD PARTY DEMAND**

NOW INTO COURT, through undersigned counsel comes **J. M. DRILLING, LLC,** defendant and its capacity here as Third Party Plaintiff, who respectfully states and shows to the Court as follows:

I.

Made third party defendants are:

(1)  Insight Risk Management, LLC, ("Insight") a Delaware corporation who can be served at Insight Risk Management, LLC, 7200 Goodlett Farms Parkway, Cordova, TN 38016-4948.

(2)  Insurisk Excess & Surplus Lines, ("Insurisk") a foreign insurance company/broker whose agent of service is Corporation Service Company, 300 Spring Building, Ste. 900, 300 S. Spring St., Little Rock, Arkansas, 72201.

2.

Rockhill initiated this action by filing a declaratory judgment lawsuit in Tennessee federal court on March 26, 2018 seeking a judgment that its policy did not provide coverage to J. M. Drilling for the claims of state court Plaintiffs, the Thibodeaux.

3.

Thibodeaux filed a lawsuit in this Court on April 12, 2018asserting that Rockhill did provide coverage to J. M. Drilling for the loss sustained in the underlying state tort suit.

4.

J. M. Drilling filed a counterclaim to the Rockhill lawsuit and a cross claim in the Thibodeaux suit also asserting that Rockhill provided coverage to J. M. Drilling as it also sought a judicial determination of declaratory relief, that there is coverage under the Rockhill policy providing coverage to J. M. Drilling for the accident and claims at issue in the underlying suit and that Rockhill Insurance Company thus has the obligation to pay the amounts of the April 6, 2018 Judgment awarded in favor of John Thibodeaux, et al and against J. M. Drilling, LLC that exceeds the policy obligations contained in the Admiral primary policy plus applicable judicial interest and defense costs.

5.

Both the Thibodeaux and the Rockhill Complaints originated as the result of the June 2015 accident in which original plaintiff in the underlying state court tort suit was injured as a result of alleged actions and/or omissions of, and by, J. M. Drilling.

**PARTIES AND JURISDICTION**

6.

J. M. Drilling is a corporation duly formed under the laws of the state of Tennessee.

7.

Insight Risk Management LLC is a Delaware Corporation.

8.

Insurisk Excess and Surplus Lines is an Arkansas Corporation.

9.

There is thus complete diversity under 28 USC 1332.

10.

This Court also has supplemental jurisdiction under 28 USC 1367 as these claims arise under the same set of circumstances and are so related to the claims in the original actions so as to be as in the original complaints in both the lead and secondary cases.

11.

At the time of the Loss, J. M. Drilling was insured through a primary insurance policy issued by Admiral Insurance Company and was insured through an excess policy issued by Rockhill.

12.

The underlying state tort suit of Thibodeaux v. Gulfgate, et al resulted in a Judgment on April 6, 2018, in the amount of $ 3,698,118.00, an amount in excess of the limits of the primary policy issued by Admiral but within the policy limits of the excess policy Rockhill Insurance Company issued to J. M. Drilling.

13.

Admiral Insurance Company, the primary insurer of J. M. Drilling, has paid out its policy limits in partial settlement of the Thibodeaux claims.

14.

The remaining amount in dispute is in excess of the $75,000 threshold for diversity jurisdiction.

15.

Rockhill has denied coverage to J. M. for this loss, based in part on a subsidence exclusion contained in the policy.

16.

J. M. Drilling maintains that the Rockhill policy does provide coverage to it for the underlying loss.

17.

Should this Court determine that the Rockhill Insurance policy does not provide coverage to J. M. Drilling, J. M. Drilling asserts it third party demands against Insight and Insurisk for the following reasons.

18.

Both Insurisk and Insight knew that J. M. Drilling conducted operations in Louisiana.

19.

At all pertinent times, Insight was the insurance agent who procured insurance for J. M. Drilling.

20.

At all pertinent times, Insurisk was the insurance broker who procured the coverage afforded under the Rockhill Insurance Company excess policies.

21.

Both Insurisk and Insight was provided information by J.M. Drilling that its main business was performing commercial construction, including excavation and directional drilling.

22.

J. M. Drilling paid premiums in excess of $ 25,000 for its excess policy that was in effect from 2015-2016 and at the time of the underlying Thibodeaux injury.

23.

Both Inusrisk and Insight sell, procure, solicit or otherwise negotiate insurance in the ordinary course of business.

24.

For many years, Insight Risk Management served as the insurance agent/agency for J. M. Drilling and were responsible for, among other things, assessing J. M. Drilling's insurance needs, facilitating insurance planning, and obtaining/procuring full and adequate insurance coverage for the benefit of J. M. Drilling, specifically including both primary and excess liability insurance to cover its excavation/drilling activities.

25.

J. M. Drilling relied on Insight Risk Management's assurances and recommendations.

26.

Both Insight Risk Management and Insurisk are insurance professionals who have specialized and superior training, information, education, and knowledge concerning insurance matters as compared to J. M. Drilling.

27.

Both Insight Risk Management and Insurisk holdout to the public as specialty in procuring appropriate and adequate insurance coverage for individuals, associations, and businesses with complex risks, and hold themselves out as insurance professionals who were willing and able to

procure such insurance coverage for J. M. Drilling. Accordingly, J. M. Drilling relied on them, to do as promised and to eliminate the risk of absent or inadequate insurance coverage.

28.

At all times relevant hereto, Insight was in a fiduciary relationship with J. M. Drilling. J. M. Drilling put a special trust and confidence in Insight who undertook to assume responsibility for the insurance related affairs of J. M. Drilling as it related to the Insured's business activities. J. M. Drilling relied heavily upon the expertise of Insight and/or Insurisk because of the specialized knowledge that is required to appreciate and understand all the intricacies of insurance related matters. Accordingly, both Insight and Insurisk had a duty to act and give correct and sound advice and guidance to J. M. Drilling on matters within the scope of their relationship.

29.

J. M. Drilling and Insight were in a contractual relationship as customer/insurance service provider and/or customer/insurance provider, pursuant to which Insight agreed to provide J. M. Drilling with professional services and adequate and appropriate insurance coverage. J. M. Drilling, in turn, promised to pay for such service and insurance coverage.

30.

Pursuant to Tenn. Code Ann. § 56-6-115(b), Insight was an authorized agent for J. M. Drilling as it relates to any controversies arising from any liability policies negotiated, solicited, or issued by Insight and/or Insurisk.

31.

As a matter of law, Insight is estopped to deny liability on a matter arising out of the negligence or mistake of Insight.

32.

It was the duty of Insight and/or Insurisk to exercise due diligence to supply J. M. Drilling with an insurance policy which would accomplish the intended purpose, i.e., to fully defend and/or indemnify J. M. Drilling in the event of a loss caused by J. M. Drilling's negligence in performing it commercial contracts.

33.

When an insurance company or its agent obtains a policy for an insured which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended.

34.

At all pertinent times, Insight and/or Insurisk represented to Plaintiff, expressly or impliedly, that the coverage in place was adequate and sufficient to fully protect J. M. Drilling from claims such as those alleged by Thibodeaux.

35.

Based on and in reliance on the representations of Insight and/or Insurisk that adequate coverage was in place, J. M. Drilling paid the insurance premiums necessary to maintain the Rockhill Policy. Pursuant to the Policy, J. M. Drilling was required to pay a premium to Rockhill in exchange for the insurance coverage. All required premiums were paid at the time of the Loss.

36.

At the time of the Loss and thereafter until Rockhill denied coverage to J. M. Drilling, J. M. Drilling reasonably believed that it was appropriately and adequately insured against claims such as those asserted by Thibodeaux, arising from the conduct of its business.

37.

At all times before the loss, J. M. Drilling reasonably relied on Insight's and/or Insurisk's representations that J. M. Drilling was appropriately insured.

38.

Both Insight and Insurisk were aware that J. M. Drilling performed directional drilling and excavations services and each never should allowed a policy to be issued to J. M. Drilling that contained a subsidence exclusion since by its very nature, the drilling and excavation work results in earth movement.

39.

Insight and Insurisk's failure to procure the appropriate insurance with sufficient limits of liability to cover claims such as those asserted by Thibodeaux, has caused J. M. Drilling to be at risk for substantial damage.

40.

Insight's and Insurisk's conduct, as discussed in detail above and below, falls significantly below the professional standards of service and care that they had promised to provide to J. M. Drilling and for which it, as a customer, had paid.

41.

As a result of Insight's and/or Insurisk's negligence and/or breach of contract, J. M. Drilling is at risk for substantial compensable losses for the amounts claimed under the Policy, as well as money damages for economic losses and other numerous and assorted incidental and consequential damages.

42.

Both Insight and Insurisk agreed to provide J. M. Drilling with an adequate amount of

liability insurance. J. M. Drilling, in turn, agreed to pay for this level coverage. Rockhill's denial of coverage, if sustained, means that Insight and Insurisk failed to provide adequate and full insurance with sufficient limits of coverage. J. M. Drilling had no knowledge of the lack of adequate insurance coverage until after the loss.

43.

J. M. Drilling had a valid and binding contract with Insight for the procurement of an appropriate insurance policy that would adequately and properly insure J. M. Drilling against liability losses. Insight agreed to procure J. M. Drilling with appropriate and adequate insurance coverage in a fashion that would fully protect J. M. Drilling from claims such as those by Thibodeaux.

44.

Both Insight and Insurisk failed to utilize reasonable care and diligence in obtaining the necessary insurance, and failed to procure insurance with the appropriate limits and coverages. Because they failed to notify J. M. Drilling of the lack of adequate insurance coverage and because of J. M. Drilling's reasonable reliance on the skills, diligence, and expertise of Insight and/or Insurisk as represented by them to J. M. Drilling, J. M. Drilling believed it was appropriately and adequately insured at all times.

45.

As a result, J. M. Drilling pleads that Insight and/or Insurisk is in total, material breach of its contract to procure and provide J. M. Drilling with full and adequate insurance coverage.

46.

Insight and/or Insurisk's failure to procure the appropriate limits of insurance and to provide the level of service contracted for (i.e., failure to appropriately and adequately insure the

drilling and excavation activities of J. M. Drilling) is a material breach of the contract, and Insight and/or Insurisk is liable to J. M. Drilling for the lack of adequate coverage/underinsurance to cover the loss claimed by Thibodeaux.

47.

Insight and/or Insurisk are liable to J.M. Drilling for negligence, negligent misrepresentation, failure to procure appropriate and adequate insurance coverage, and breach of fiduciary duty.

48.

J. M. Drilling relied on Insight's and/or Insurisk's alleged expertise and advice in connection with its insurance matters.

49.

J. M. Drilling looked to Insight and/or Insurisk to obtain the insurance coverage needed to appropriately and sufficiently insure their business activities. Insight and/or Insurisk, promised, and J. M. Drilling expected, that J. M. Drilling would be provided appropriate and adequate insurance coverage by a sound company which could and would properly and promptly pay and honor valid claims when they are made.

50.

In providing the aforementioned and hereafter referenced services to J. M. Drilling, Insight's and Insurisk's employees/agents/authorized representatives were acting within the ordinary course and scope of their business.

51.

J. M. Drilling engaged Insight to procure appropriate and adequate insurance for its business activities, and reasonably relied upon Insight to take whatever steps might be necessary

to procure the appropriate insurance coverage.

52.

Insight and/or Insurisk failed to utilize reasonable diligence in obtaining the necessary insurance and failed to procure insurance with the appropriate limits. Because they failed to notify J. M. Drilling of the lack of appropriate insurance coverage and because of J. M. Drilling's reasonable reliance on the skills, diligence, and expertise of Insight and/or Insurisk, J. M. Drilling believed it was appropriately and adequately insured at all times.

53.

Insight's and/or Insurisk's express and implied representations to J. M. Drilling justifiably warranted its reliance on the representations that it was properly insured. If the Court finds that the Rockhill policy does not provide coverage for the underlying loss, then Insight's and Insurisk's representations that J. M. Drilling was appropriately insured were false, and Insight and/or Insurisk failed to exercise reasonable care in obtaining or communicating to J. M. Drillings an accurate portrayal of the nature and extent of the insurance coverage afforded to J. M. Drilling.

54.

One who holds himself out to the public as an insurance professional is required to have the degree of skill, knowledge, and diligence requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds such person to the exercise of good faith and reasonable skill, care, and diligence in the execution of the commission. He is expected, and indeed required, to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the areas in which the customer needs protection. If the coverage obtained is deficient because of his failure to exercise the requisite skill or diligence, he becomes liable to the customer for the loss sustained.

55.

It is the universal rule that an agent who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting.

56.

The standard of care applicable to Insight and/or Insurisk required that they: (1) determine the risk exposures faced by J. M. Drilling; (2) evaluate J. M. Drilling's insurance needs and make such inquiries as may be necessary to obtain sufficient information to determine those needs; and (3) recommend coverage with appropriate policy language and full and adequate limits with a sound insurer.

57.

Insight and Insurisk also owed J. M. Drilling a duty: (1) to procure adequate insurance coverage based on its needs; (2) to counsel and guide J. M. Drilling concerning their insurance needs; (3) to act with reasonable skill, care, and diligence in securing appropriate and adequate insurance coverage for it; (4) to give reasonable information and instructions concerning J. M. Drilling's insurance needs and to make such inquiries as may be appropriate to ensure that it is adequately insured; (5) to inform J. M. Drilling of all document requests necessary to ensure full and desired coverage and (6) to act as a reasonably prudent insurance professional.   Insight and Insurisk also owed J. M. Drilling a duty to exercise due diligence to supply it with a policy which would effect the purpose intended, i.e., to fully indemnify J. M. Drilling in the event of a loss such as involved in the underlying state tort suit.

58.

Insight and Insurisk breached the applicable standard of care, and each of the above duties.

59.

Insight breached the fiduciary duty owed to J. M. Drilling by failing to fulfill its responsibility and obligation to adequately insure it.

60.

Insight's and Insurisk's negligence, negligent misrepresentations, failure to procure adequate insurance coverage, and breach of fiduciary duty is the cause-in-fact, legal, and proximate cause of J. M. Drilling's damages.

61.

As a result of Insight's and/or Insurisk's negligence, negligent misrepresentation, failure to procure adequate insurance coverage, and breach of fiduciary duty, J. M. Drilling lacked adequate insurance coverage at the time of the Loss and have suffered and continue to suffer substantial damages.

WHEREFORE, as a result of the foregoing, J. M. Drilling would respectfully request that proper process be issued and served on the Third Party Defendants requiring them to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award a judgment against them as follows:

- A. For compensatory damages sufficient to satisfy the Judgment awarded to Thibodeaux and against J. M. Drilling in the state tort suit;
- B. For punitive damages where applicable;
- C. For all costs incurred as a result of this action;
- D. For discretionary costs, pre- and post-judgment interest;
- E. That costs be taxed to Third Party Defendants; and
- F. For such other further and general relief as this Court deems just and equitable.

Respectfully submitted:
**RABALAIS & HEBERT**

*s/ Melvin A. Eiden*
_____

**MELVIN A. EIDEN (#19557) TA**
**BLAKE T. COUVILLION (#37443)**
**701 Robley Dr., Suite 210**
Lafayette, Louisiana 70503
(337) 981-0309
**ATTORNEY FOR DEFENDANT AND**
**THIRD PARTY PLAINTIFF,**
**J. M. DRILLING, LLC.**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this day been forwarded as follows:

|     |                              |
| --- | ---------------------------- |
| --- | U.S. Mail (First Class)      |
| --- | Hand Delivery                |
| --- | Facsimile                    |
| --- | Overnight Delivery           |
| X   | E-Mail – All Known Counsel   |

Lafayette, Louisiana on this 7th day of November, 2019.

*s/ Melvin A. Eiden*
_____
**MELVIN A. EIDEN**