NITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JOHN THIBODEAUX, ET AL

VERSUS

J. M. DRILLING, LLC, ET AL

NO.:  6:18-CV-00501-RRS-CBW(LEAD)
NO.:  6:18-CV-01414-RRS-CBW (MEMBER)

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE CAROL B. WHITEHURST

MEMORANDUM IN SUPPORT OF J.M. DRILLING JOINDER AS CROSS-CLAIMANT IN THIBODEAUX MOTION FOR SUMMARY JUDGMENT IN LEAD CASE AND J.M. DRILLING AS COUNTER-CLAIMANT MOTION FOR SUMMARY JUDGMENT IN MEMBER CASE

MAY IT PLEASE THE COURT:

## I.    INTRODUCTION

The primary issue in this consolidated matter is whether Rockhill Insurance Company ("Rockhill") has an obligation to indemnify its insured, J. M. Drilling, LLC ("J.M.") for its liability in the state court lawsuit brought by the Thibodeaux family.  The state court proceedings resulted in a finding that J. M. Drilling was liable for Mr. John Thibodeaux's injuries resulting from J. M. Drilling's alleged negligence. (Fact # 13).  The Thibodeaux Plaintiffs ultimately obtained a judgment against J. M. Drilling for $3,698,118.00, which was subsequently reduced on appeal to $3,575,252. (Fact # 15)

At all pertinent times, J. M. Drilling was insured under a primary Admiral Commercial General Liability policy CG00-01004-13 with policy limits of $1,000,000.00 per occurrence (Exhibit 1, Fact #1)  and insured under a Rockhill Follow Form excess policy, policy number XSI RU 000621-03 with policy limits of $5,000,000.00 (Exhibit 2, Fact #2).

J. M. Drilling as a defendant and cross-claimant in the Lead case joins in the Motion for

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 1

Summary Judgment on Coverage filed by Thibodeaux in the Lead case and, as counter-claimant, also brings its own Motion for Summary Judgment on coverage in the Member case. In support of both of its Motions, J. M. Drilling hereby adopts the Thibodeaux Statement of Facts, the Thibodeaux argument set forth in its Memorandum in Support and the exhibits contained in the Thibodeaux Motion and Memorandum in Support of their Motion for Summary Judgment.

Additionally, J. M. Drilling makes the following argument in support of its own Motions for Summary Judgment. This matter is ripe for summary judgment since the parties do not genuinely dispute the material facts underlying this case. Their only dispute is the legal significance of those facts. *State Farm Fire & Cas. Co. v. Salley (*E.D. Tenn. 2021)

Rockhill's reliance on the Residential Contractor Exclusion is misplaced primarily because J. M. had no liability for residential construction, and it was not performing residential construction work on property intended for habitation.

Rockhill's reliance on the subsidence exclusion is misplaced because Thibodeaux's injury was not caused by subsidence, J. M. had no liability for subsidence, the subsidence exclusion only applies to ongoing operations and this was completed work and the contractor's limitation endorsement modified the exclusion so that it only applies to property damage and does not apply to claims for bodily injury.

Lastly, there was one accident and only one occurrence.

Rockhill initiated the insurance coverage litigation by filing a Declaratory Judgment action against J. M. Drilling in Tennessee, which was subsequently transferred to this Court and consolidated with the Declaratory Judgment action filed by Thibodeaux (Docs. 8, 62).  In its Complaint filed in the instant Member Action, Rockhill seeks a declaration that Rockhill has no coverage obligations to J. M. Drilling for the Underlying Lawsuit, under a Rockhill excess policy

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 2

issued to J. M. Drilling. (Doc 8).  Specifically, Rockhill is seeking a declaration that the Rockhill Policy does not provide coverage for one or more of the following reasons: The Residential Construction Exclusion Bars Coverage and/or the Subsidence Exclusion Bars Coverage. Rockhill also asserts that the Admiral policy has not exhausted its limits because it paid out on the basis of there being one occurrence and Rockhill maintains that there were two. (Docs. 8, 206). J. M. Drilling

In response to Rockhill's Declaratory Judgment action in Tennessee, J. M. Drilling asserted a counter-claim seeking a determination that the Rockhill policy did provide coverage to it for the Thibodeaux loss. (Exhibits 4,5, 6). In response to the Declaratory Judgment brought by Thibodeaux, J.M. Drilling asserted cross-claims against Rockhill again seeking a favorable coverage determination. (Exhibits 7, 8). Once Admiral paid its policy limits plus interest to date, coverage under the Rockhill Excess Follow Form policy was triggered. (Ex. 2, Doc 58 and Ex 24.)

For the following reasons, J. M. Drilling respectfully asserts that the Rockhill policy does in fact provide coverage to J. M. Drilling for the underlying loss sustained by Thibodeaux and for the payment of the Judgment awarded to Thibodeaux.

## II.    SUMMARY JUDGMENT STANDARDS

"Under Rule 56, summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". *Weatherly v. Pershing, L.L.C.,* 945 F.3d 915 (5th Cir. 2019). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 3

satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.; For Senior Help, LLC v. Westchester Fire Ins. Co.,* 451 F.Supp.3d 837 (M.D. Tenn. 2020). "A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.,* 915 F.3d 987 (5th Cir. 2019) "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim.' Wease v. Ocwen Loan Servicing, L.L.C., 915 F.3d 987 (5th Cir. 2019). The nonmovant then "must come forward with specific facts showing that there is a genuine issue for trial." *Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 245 (5th Cir. 2016). This Court may grant summary judgment on any grounds supported by the record and presented to this Court. *Forbes v. Harris County,* 19-20431 March 4, 2020 (5th Cir.)

Further, summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). It will be Rockhill's burden to prove that the exclusions in the policy apply to limit or exclude coverage to this loss/claim.

## III.   INSURANCE COVERAGE LAW IN TENNESSEE

The Rockhill policy at issue was issued in favor of J.M. Drilling, a Tennessee corporation and this policy was delivered to J. M. Drilling or its agent in the State of Tennessee. (Exhibit 2, Doc. 8). All parties have recognized that Tennessee law governs the interpretation of the policy.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 4

A.    ANALYSIS

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012).  Interpretation of an insurance policy is a question of law and not fact. "Insurance contracts are subject to the same rules of construction as contracts generally, and, in the absence of fraud or mistake, the contractual terms should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009).

"In resolving disputes concerning contract interpretation, the task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language". *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.,* 78 S.W.3d 885, 889-90 (Tenn. Ct. App. 2002) (quoting *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999).

There is no dispute that J.M. Drilling is the named insured under the Rockhill policy and that the policy provides coverage for this loss unless an exclusion applies.  "An insurance company has the burden of proving that an exclusion in its policy applies to a claim". *Interstate Life & Accident Ins. Co. v. Gammons,* 408 S.W.2d 397, 399 (Tenn. Ct. App. 1966).  "It is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts ,* 811 S.W.2d 883, 886 (Tenn. 1991). These clauses should not, however, "be so narrowly construed as to defeat their evident purpose." *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001). The duty to indemnify is based on facts found by the trier of fact.  *Clark v. Sputniks LLC,* 368 S.W.3d 431, 439 (Tenn. 2012).  Contracts of insurance are strictly construed in favor of the

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 5

insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *State Farm Fire & Cas. Co. v. Salley* (E.D. Tenn. 2021)

### B.   CONCURRENT CAUSE/SUBSTANTIAL FACTOR

Tennessee recognizes the concurrent cause doctrine, which provides that there is insurance coverage in a situation "where a non-excluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn.1991). *Clark v. Sputniks, LLC*, 368 S.W.3d 431 (Tenn. 2012).

The Insuring Agreement in the Rockhill policy reads as follows:

    1.   INSURING AGREEMENT

We, the Company, in return for the payment of the premium, agree with you, as follows:

    A.   Excess Following Form Liability Over Underlying Claims Made or Occurrence Coverage

We will pay, on behalf of the insured, the ultimate net loss in excess of the amount payable under the terms of any Underlying Insurance as stated in the Schedule of Underlying Insurance, that the insured becomes legally obligated to pay as damages because of injury or damages to which this insurance applies, but only after the Underlying Insurance has been exhausted by payment in full.

This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the Underlying Insurance except as otherwise provided in this policy; provided, however, that in no event will this insurance apply unless the Underlying Insurance applies or would apply but for the exhaustion of its applicable Limit of

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 6

Liability.

If the Schedule Underlying Policy affords coverage on a claims made basis then for this insurance to apply:

1.      the injury or damage must be caused by an occurrence that takes place in the coverage territory;

2.      the claim for the injury or damage must first be made against the insured during the Policy Period or the Extended Reporting Period provided herein; and

3.      a.      the bodily injury or property damage; or
        b.      the occurrence causing the personal injury, advertising injury or professional liability injury;

        must take place on or after the Retroactive Date shown in item 5 of the Declarations and before termination of this policy.

        If the Scheduled Underlying Policy affords coverage on an occurrence basis then for this insurance to apply:

4.      the injury or damage must be caused by an occurrence that takes place in the coverage territory; and

5.      the bodily injury or property damage or the occurrence causing the personal injury, advertising injury or professional injury;

        must take place during the Policy period.

(Exhibit 2, JMD000745-46)

Within an insurance contract, "exclusions help define and shape the scope of coverage."

*Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). While the insuring agreement sets the outer limits of insurer liability, exclusions operate to decrease coverage. *Id.* Exclusions "should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose." *Id.* at 8.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 7

Typically, there is insurance coverage where an excluded cause of loss and a covered cause combine to cause damage. See *Planet Rock v. Regis Ins. Co.*, 6 S.W.3d 484, 493 (Tenn. 1999). An insurer may contract around that possibility, however, through use of an "anti-concurrent cause provision," (ACC) such that there is no coverage for damage that is caused in any manner by an excluded cause regardless of any other concurring or contributing causes. See *Front Row Theater, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir. 1994); *Hardy v. Kelly LLC v. QBE Ins. Corp.*, No.3-11-0155, 2012 WL 1744670, *3 (W.D. Tenn. May 16, 2012). As shown below, there can be no dispute that the subsidence exclusion at issue in this matter **does not contain such an anti-concurrent cause provision.**

"Where provisions that purport to limit insurance are ambiguous, however, they must be construed against the insurance company and in favor of the insured." *Osborne v. Mountain Life Ins. Co.,* 130 S.W.3d 769, 773 (Tenn. 2004). *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). The interpretation of a written agreement is a question of law and not of fact. *Williams v. State Farm Mut. Auto. Ins. Co.* (Tenn. App. 2020).

## III. RESIDENTIAL CONTRACTING–CONSTRUCTION DEFECT EXCLUSION DOES NOT APPLY

### A. THE EXCLUSION

One basis for denying coverage contended by Rockhill is the Residential Contracting-Construction Defect Exclusion contained in the policy (Exhibit 2 JMD000804). The Exclusion reads as follows:

> THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY

> Residential Contracting – Construction Defect Exclusion

> This endorsement modifies insurance under the following:

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 8

Commercial Umbrella Policy
Commercial Follow Form Policy
Commercial Excess Liability Policy

This policy does not apply to any loss, cost or expense, directly or indirectly arising out of or related to the liability of "Contractors" for "Residential Construction".

As used in this exclusion:

"Contractors" means all developers, general contractors, subcontractors, trade persons, organizations, or any other person or entity involved in "Residential Construction."

"Residential Construction" means all development, design, building or other construction, improvements, site selection, surface or subsurface site preparation, or any work, products or components parts thereof or services provide in relation to any of the foregoing, involving property intended in whole or in part for residential habitation,   "Residential Construction" does not mean your work performed on, or your product used in apartments. Apartments do not include condominiums, town houses, or any multi-family dwelling that has been converted into rental units or rented to others, nor does it include apartment buildings or complexes if they have been converted into condominiums or co-operatives.

**B.     TITLE OF EXCLUSION CONTAINS CONSTRUCTION DEFECT LANGUAGE**

The exclusion is titled "Residential Contracting – Construction Defect Exclusion".  On its website, the International Risk Management Institute, Inc. defines "Construction Defect" as, "generally speaking, a deficiency in the design or construction of a building or structure resulting from a failure to design or construct in a reasonably workmanlike manner, and/or in accordance with a buyer's reasonable expectation".  This definition is an acceptable use of the phrase "construction defect" in the insurance industry.   If words have a commonly- understood meaning, this exclusion only applies to injury or damages caused by a construction defect - a

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 9

failure or design of a structure. Clearly, this exclusion has no application to the Thibodeaux bodily injury claim caused by a pipe being struck by J.M.

### C.   J. M. WAS NOT SUBJECT TO LIABILITY FOR RESIDENTAL CONTRACTING

This Exclusion is not applicable to this loss in that J.M. was **not subject to "liability" for residential construction.** (Facts # 32-34).  J. M. was sued for bodily injury to Thibodeaux caused by the alleged negligence by J.M. in performing its work under a commercial contract with ATT to install fiber optic cable.  (Facts # 10-12). ATT/Bell South did not sue J. M. The owner of the broken pipe did not sue J. M. Drilling. No homeowner sued J, M.   The Homeowner's Association did not sue J. M.  Only Thibodeaux sued J. M. for a claim for bodily injury resulting from J. M.'s alleged negligence in striking the underground pipe.  Neither he nor any other person or entity sued J. M. Drilling for anything connected to residential construction.

### D.    J. M. IS NOT A CONTRACTOR AS DEFINED IN THE ENDORSEMENT AS IT WAS NOT INVOLVED IN RESIDENTIAL CONSTRUCTION

There are also other reasons why the "Residential Construction Exclusion" is clearly inapplicable to defeat coverage as the underlying matter did not involve "Residential Construction" as defined by the Rockhill Policy.

To be a "contractor" as defined in this endorsement, J. M. had to be involved in "Residential Construction". This is limited to those whose work is defined as "involving property intended in whole or in part for residential habitation."

### E.    J. M.'S WORK ON THE UTILITY LOT

In reference to the Residential Contracting Endorsement, the location of the incident that was the subject of the work being performed by J. M. Drilling was a subdivision utility lot-a lot that was not intended to have a residence built on it nor to house any residential structures. (Facts

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 10

#3, 4).

In February of 2015 J. M. Drilling was performing operations installing fiber optic cable at utility lot 114 in Sawgrass Subdivision pursuant to a contract with ATT/Bell South. (Fact # 3) Lot 114 Sawgrass Subdivision was a designated utility lot located in Sawgrass Subdivision containing utilities such as Cox, AT&T, and the sewer station for the Subdivision. (Fact #4).  All work performed by J.M. Drilling relevant to the accident was performed pursuant to a Master Commercial Contract with AT&T covering 3 states: Louisiana, Mississippi and Alabama. (Fact #5). Per the Master Commercial Contract with AT&T, J.M. Drilling was to install fiber optic cable by borehole drilling, digging and excavating to bury fiber optic cable in utility easements along roads and streets and this was the work being performed by J.M. Drilling at all times relevant to the accident, J. M. Drilling corporate deposition (Facts # 3-6, Ex 18, page 26 Kasal Deposition).

The Contractor's Questionnaire provided by J. M. Drilling to Rockhill reported J.M.'s work as 100 per cent commercial (Fact # 27, Ex 14). As such, the fiber optic cable work performed by J. M. Drilling at this location would not meet the criteria for "residential construction".  Actually, the work performed by J. M. Drilling would be classified as conduit construction for cables or wires and thus, this residential contractor endorsement does not negate coverage for this loss. The J. M. Drilling contract with Bell South/ATT was a commercial contract for the purpose of laying fiber optic cable.

### F.    THE UTILITY LOT IS NOT PROPERTY INTENDED IN WHOLE OR IN PART FOR RESIDENTIAL HABITATION

Kelli Kasal, the Rockhill claims representative who denied this claim danced around the question of whether the utility lot was "intended for residential habitation".  She actually testified

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 11

that this exclusion applied because (1) the utility lot benefited the residential development and (2) the "lot was intended for residential use". (Exhibit-18, p118, 119). However, she acknowledged that the phrase "habitation" is not defined in the policy (although "habitation" and not "benefit" or "use" is the operative trigger word for the exclusion applicability.

By its very definition a utility lot is not "property intended in whole or in part for **residential habitation**".  The phrase **"residential habitation"** is not defined in the Rockhill Excess policy. However, the underlying primary Admiral policy also contained a residential activities exclusion that Admiral appropriately decided was not applicable to the claims of Thibodeaux. (Exhibit 1, JMD000704).

The Admiral "Residential Construction Activities Exclusion" provides some guidance as to the application of the term "residential construction". The Admiral exclusion regards residential construction as applying to "…single family dwellings, multi-family dwellings, condominiums, townhomes, townhouses, time-share units, cooperatives and any other structure **or space** used or intended to be used as **a residence**…" (Emphasis added). Thus, it is crystal clear that Admiral properly did not rely on this exclusion to deny coverage because the utility lot where the incident occurred was not property "or space" intended to be used as a residence.

It should be noted that even the Rockhill exclusion contemplates that it only applies to residential property. The exclusion carves out an exception for "your work performed on apartments".  It then defines what is not included in the term apartments so as for those items to be included in the exclusion. All of these non-apartments however, are the types of property where people live as residents.  Thus, the only property references contained in the Rockhill exclusion are to actual residential properties where people actually live, not anything like the utility lot where no residences were to be built.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 12

Using the clear accepted meaning of the plain words, **residential property** is property considered specifically for living or dwelling for individuals or households; it may include standalone single-family dwellings to large, multi-unit apartment buildings

**Habitation** connotes a building that can be used as a dwelling or place of residence. Merriam-Webster online dictionary definition of **"habitation"** at http://www.merriam-webster.com/dictionary/habitation**.** There was not, and is not, any residential building on the utility lot where J. M. Drilling's work was performed. Thus, any possible application of this exclusion to J. M.'s work on the designated utility lot space not intended for anyone to reside is completely negated.

Although there are no Tennessee cases interpreting the phrase "residential habitation", case law from other jurisdictions clearly show that Courts have noted a substantive difference and have differentiated between residential lots and non-residential lots in a subdivision. See *Thomas v. White Birch Lakes Recreation Ass'n* (Mich. App. 2015) where the Court decided consolidated appeals arising from disputes over recreational uses of lots composing the several subdivisions of the White Birch Lakes Recreation Association. The Court held that the differentiation between those lots with and without residential dwellings reasonably reflected the single-family residential purpose of the development. A lot with a house on it obviously comports with the single-family residential aspiration of the development and continues to emanate single-family residential character even if storing a trailer or other camping equipment thereupon year-round. Not so a lot that has no anchoring residential dwelling but that is loaded with equipment for camping, which activity differs from the purely residential by involving "people . . . temporarily lodged in tents, huts, or other makeshift shelters," or "more or less permanent . . . shelters[] used for vacationing or other recreational purposes.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 13

In our case, the utility lot does not even involve or contain temporary lodging, it is a utility lot and not a property intended for residential habitation.

## G.   ALTERNATIVELY, THE RESIDENTIAL CONSTRUCTION EXCLUSION IS AMBIGUOUS

Contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *State Farm Fire & Cas. Co. v. Salley* (E.D. Tenn. 2021).   It is obvious by the testimony of Rockhill's own personnel that the disputed provision is susceptible to more than one plausible meaning. Rockhill's own representatives, Mike Towel (Rockhill underwriter for this policy/claim) and Kelli Kasal (Rockhill claim adjuster for this policy/claim), interpret and apply Rockhill's   Residential Contracting-Construction Defect Exclusion in an entirely different and inconsistent manner, to wit: (Facts #28-30).

Mike Towel understood the nature of J, M's work and testified it was not his belief and intent that Rockhill's Residential Contracting-Construction Defect Exclusion would exclude what J.M. did. (Fact # 29).

To the contrary, Kelli Kasal testified that Rockhill's Residential Contracting-Construction Defect Exclusion would exclude any of J. M.'s operations that occurred within the confines of a residential subdivision, and would even apply to exclude any work being performed well outside a residential subdivision if the work ultimately connected to a residential construction site at some point. (Fact # 30).

For Rockhill's two representatives to have such 180-degree divergent opinions on the application of this exclusion speaks more eloquently than counsel ever could as to the inherent ambiguity and error of Rockhill's position.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 14

## IV.    SUBSIDENCE EXCLUSION DOES NOT APPLY

The Rockhill Policy contains a subsidence exclusion which states in pertinent part that the policy will not apply:

> "to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributing to or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, lifting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable".

(Exhibit 2, JMD000759)

It is self-evident by its very name that J.M. Drilling's work involves drilling which by definition involves movement of land or earth. To include a subsidence exclusion in a policy that supposedly was providing coverage to a drilling contractor makes that policy illusory and its use should be disallowed. Even so, there are several other distinct reasons why the Subsidence Exclusion does not apply even if the facts are as stated by Rockhill in its own Complaint for Declaratory Judgment. Each reason stated below on its own is sufficient to demonstrate why the subsidence exclusion does not apply and put together, they overwhelmingly do so demonstrate.

### A.    J. M. WAS NOT SUBJCT TO LIABILITY DUE TO SUBSIDENCE

J. M. was not **subject to any liability** caused by subsidence. The sequence of events is that  (1) J. M. broke the pipe; (2) J, M. did not notify anyone it broke the pipe; (3) the pipe began to leak once it was put into use;  (4) the leaking fluids caused a sinkhole and (5) Thibodeaux was injured when falling into the sinkhole. (Facts 8-10. 12-14). J.M. was thus subject to liability caused by its own alleged negligence in striking the pipe. The breaking of the pipe was a substantial factor in that you do not have the sinkhole if the pipe was not broken. No owner of any structure or property sued J. M. for causing subsidence or for damages arising from

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 15

subsidence.

**B.    CONCURRENT CAUSE/SUBSTANTIAL FACTOR TEST**

Under Tennessee law's substantial factor test, when there are two causes of a loss - - one covered and one not covered -- then the entirety of the loss is covered if the covered cause was a substantial factor in the causation of the loss or damage.  *Allstate v. Watts*, 811 S.W.2d 883 (Tenn. 1991). Moreover, the Tennessee Supreme Court has "specifically rejected the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury".  *Id.*; see also *Penn-Star Ins. Co. v. Willis*, 2006 WL 2105993 (Tenn. Ct. App. 2006) (In a situation in which multiple events may have caused an injury and one of those events is excluded from insurance coverage, there is coverage if a covered event was a substantial factor in causing the damage).

**C.    SUBSIDENCE EXCLUSION DOES NOT CONTAIN ANTICONCURRENT CAUSE LANGUAGE**

Typically, there is insurance coverage where an excluded cause of loss and a covered cause combine to cause damage. An insurer may contract around that possibility; however, through use of an "anti-concurrent cause provision," such that there is no coverage for damage that is caused in any manner by an excluded cause regardless of any other concurring or contributing causes. The subsidence exclusion contained in the Rockhill policy does not contain an anti-concurrent cause provision.

This lack of anti-concurrent language is crucially important to interpreting the subsidence exclusion.  Rockhill clearly understood the implications and ramifications of anti-concurrent clauses because Rockhill placed those clauses in other exclusions in this exact policy (See fungi

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 16

exclusion (Ex 2, JMD000759, silica exclusion (760) and the Organic Pathogen exclusion (777) contained in Exhibit 2. Facts # 21-23). Indeed, what these other exclusions tell us is that when Rockhill wanted to exclude coverage for otherwise included work based on concurrent causes, Rockhill knew how to craft appropriate wording. That similar anti-concurrent clause language was omitted from the subsidence exclusion indicates an intention for the subsidence exclusion to be narrower in its scope and to only apply to those situations where there is absolutely no concurrent cause.

### D.    CAUSE OF THIBODEAUX INJURY

To reiterate, between February and March of 2015, J. M. Drilling struck the sewer force main line with its excavator while performing digging operations on the utility lot, Lot 114. J.M. Drilling employees never knew they struck and broke the sewer line and did not know that they needed to report a break in the sewer line.  J. M. Drilling's negligent striking of the sewer line caused a break/separation to occur underground. The break caused the sewer line to leak. The leak caused a void/cavern to form. The void/cavern caused Thibodeaux's accident. Thibodeaux suffered a single accident on a utility lot located at 114 Meadowgate (Lot 114) in Sawgrass Subdivision in Lafayette Parish when the ground near AT&T equipment where he was working gave way, suddenly and without warning, causing injuries. Thibodeaux suffered no other accidents that day (Facts #8-14).

### E.    PRODUCTS COMPLETED OPERATIONS

Section III B, Limits of Liability in the Rockhill policy provides coverage for injury included in the products-completed operations hazard. (Exhibit 2, JMD000740, 751). This hazard provides coverage for "all 'bodily injury' occurring away from premises you own or rent and arising out of your work".  The products completed operations hazard states that "Your work

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 17

will be deemed completed when all the work to be done at the job site has been completed if your contract calls for work at more than one job site." (Exhibit 1, JMD000772)  J. M.'s work at this job site was completed several months before Thibodeaux became injured on June 9, 2015 at the Sawgrass utility lot job site (Fact # 11). Ms. Kasal of Rockhill admitted that this loss would fall under the completed operations hazard. (Ex. 18, pp 94-95).   Coverage for completed operations provides another reason why the subsidence exclusion does not apply since this loss falls within the ambit of the products completed operation coverage.

By using the specific term "emanating from operations" a plain reading of the subsidence exclusion reveals that it clearly only applies to ongoing operations of J. M and does not apply to completed operations. This point can be illustrated by analyzing the language in the pollution liability exclusion, the only other provision in the Rockhill policy that contains the word "operations" and which uses it in the present and not the past tense. This pollution exclusion precludes coverage at any premises on which any insured "is performing operations". Since the subsidence exclusion applies to ongoing "operations" and since this loss falls under completed operations- the subsidence exclusion does not apply. At worst, the term "operations" is ambiguous as to whether it means present or completed operations and thus, must be construed in the manner most favorable to J. M. Drilling.

### F.    CONTRACTORS LIMITATION ENDORSEMNT

The policy also contains a Contractors Limitation Endorsement, which by its very distinct language, modifies all the terms of the Rockhill Follow Form Policy. (Ex 2, JMD000782). The essence of this Endorsement is that it carves out and deletes any applicability of the subsidence exclusion for loss concerning bodily injury and limits the exclusion to only claims for property damage.

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 18

This Endorsement states in pertinent part:

This insurance is modified by the following provisions:

. . .

2.      Except insofar as coverage is available to the insured in valid and collectible Underlying Insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and then only for such liability for which coverage is afforded under said insurance, this insurance shall not apply to:

a.      any liability assumed by the insured under any contract or agreement.

b.      any liability for property damage to property leased by, used by, or in the care, custody or control of the insured or as to which the insured is for any purposed exercising physical control; or

c.      for property damage arising out of:

(1)      blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

(2)      the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, cofferdam work or caisson work, or (b) moving, shoring, underpinning, raising or demolition of any building or structure, or removal of rebuilding of any structural support thereof; or

(3)      injury to or destruction of wires, conduits, pipes, mains, sewers, tank, tunnels, any similar property and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land,

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 19

> excavating, drilling, borrowing, filing, back-
> filling or pile driving.

The Admiral policy did not contain a subsidence exclusion. Thus, coverage "was afforded to the insured" under the Admiral policy for subsidence. Since coverage was afforded to J. M. for subsidence in the Admiral policy, the above Endorsement modifies the subsidence exclusion to have it only apply to any **property damage** which would have been claimed as a result of J. M.'s excavating trenching and/or drilling operations at the utility lot (EMPHASIS IS IN THE ORIGINAL).

### G. PERSUASIVE AUTHORITY PERTAINING TO SUBSIDENCE EXCLUSIONS AND DRILLING CONTRACTORS SUCH AS J.M. DRILLING

The case of *United Nat'l Ins. Co. v. Assurance Co. of America*, 2012 WL 1931521 (D. Nev., 2012) is directly on point as persuasive authority. The insurer attempted to apply the subsidence exclusion in that case to an insured who was in the "rough grading and earthwork services" business.   The thrust of the Court's denial of the applicability of the subsidence exclusion was that:

> "However, it would be unreasonable to conclude that R.B. Peterson, a grading contractor that moves land as its business, would consider this language to exclude all of its grading and construction work (and resulting damage) to be excluded from the insurance policy it purchased. If so, it would have been entirely illogical to purchase the policy in the first instance. Therefore, this could not have been R.B. Peterson's intention (or National Fire's original intention for that matter, assuming it dealt with R.B. Peterson in good faith."

In *Broom v. Wilson Paving & Excavating, Inc.,* 356 P.3d 617, 2015 OK 19 (Okla., 2015), the Court held that "We agree with the reasoning of the court in *United Nat. Ins.* and conclude that it is highly unlikely that Wilson Paving, a company whose business involves "excavation,

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 20

tunneling, underground work [and] earth moving," would have purchased the policy with knowledge that it would not cover losses to property or injuries to persons other than employees due to man-made earth movement.  As Wilson Paving pointed out in its Motion to Reconsider, "[i]f this exclusion applies to injury related to excavation of ditches or any excavation or paving work, then Wilson Paving paid $34,394.00 for no insurance coverage because all of its operations necessarily 'arise out of, are caused by, result from, contribute to, are aggravated by, or are related to ... movement of land, earth or mud'",

Like the insured in *Broom,* J. M. Drilling operations of necessity included "excavation, tunneling, underground work [and] earth moving". The name "J. M. Drilling" indicates that its operations will involve drilling into the earth and creating movement of land and earth.  To disclaim coverage to a drilling company for injuries allegedly sustained as a result of those drilling operations is similar to the insured in Broom paying $34,394.00 in premiums for no coverage at all.

## V.     THERE WAS ONLY ONE OCCURRENCE

Although there were two negligent acts by J.M. (striking of the pipe and failure to report it), there was only one accident (Thibodeaux falling in the hole and becoming injured) and one occurrence (Rockhill argues that each negligent act was a separate occurrence).  The Rockhill policy provides that this insurance applies to injury caused by an occurrence in the coverage territory and during the policy period. (Exhibit 2, JMD000745-46).  Both conditions are met here.

The Rockhill policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results in bodily injury or property damage which is neither expected nor intended from the standpoint of the

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 21

insured. All such exposure to substantially the same general conditions will be considered as arising out of one occurrence".   (Exhibit 2, JMD000770-71).

First, one must note that the term "accident" is not defined in either the Rockhill or Admiral policies and the word "accident" is used as a singular noun and not as a plural noun. Here, we have a singular accident to Thibodaux as a result of J. M.'s striking the pipe and causing it to subsequently leak.

It appears that Tennessee follows the "effects" theory of causation. This theory states, generally, that limits in a liability policy which limit the insurer's liability to a specified amount "per occurrence" or "per accident" refers to the effect of the occurrence or accident, thus making the entire policy limits available to each injured or damaged party.  *American Modern Select Ins. Co. v. Humphrey (*E.D. Tenn. 2012).  Under this theory, the incident involving Thibodeaux was an accident (his falling in the hole) which resulted in his bodily injury and which consisted of one occurrence.

## VI.    CONCLUSION

Admiral paid its policy limits plus judicial interest accrued as of the time of payment. (Doc 58 and Exhibit 25). The exhaustion of its limits payment by Admiral triggers the coverage afforded by the Rockhill Excess Follow-Form policy.

Rockhill's reliance on the Residential Contractor Exclusion is misplaced primarily because J. M. had no liability for residential construction, and it was not performing residential construction work on property intended for habitation.

Rockhill's reliance on the subsidence exclusion is misplaced because Thibodeaux's injury was not caused by subsidence, J. M. had no liability for subsidence, the subsidence exclusion only applies to ongoing operations and this was completed work and the contractor's

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 22

limitation endorsement modified the exclusion so that it only applies to property damage and does not apply to claims for bodily injury.

Lastly, there was one accident and only one occurrence.

Therefore, J. M. Drilling has shown entitlement to summary judgment being granted in its favor and a determination that the Rockhill policy provides coverage to it for the Thibodeaux Judgment. Rockhill cannot meet its burden of proving that its exclusions apply to defeat coverage

Respectfully submitted:

**RABALAIS & HEBERT, LLC**
*s/ Melvin A. Eiden*

_____
**MELVIN A. EIDEN (#19557) TA**
**701 Robley Dr., Suite 210**
Lafayette, Louisiana 70503
(337) 981-0309
**ATTORNEY FOR DEFENDANT,**
**J. M. DRILLING, LLC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this day been forwarded by E-mail to all known counsel.

Lafayette, Louisiana on this 23rd day of March, 2021.

*s/ Melvin A. Eiden*

_____
**MELVIN A. EIDEN**

John Thibodeaux, et al vs. J. M. Drilling, LLC, et al
Memorandum in Support of Motion for Summary Judgment on Insurance Coverage Filed on behalf of J. M. Drilling, LLC
Page 23