**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **JOHN THIBODEAUX, ET AL** | **NO.: 6:18-CV-00501-RRS-CBW(LEAD)** |
| | **NO.: 6:18-CV-01414-RRS-CBW (MEMBER)** |
| **VERSUS** | |
| | **JUDGE ROBERT R. SUMMERHAYS** |
| **J. M. DRILLING, LLC, ET AL** | |
| | **MAGISTRATE CAROL B. WHITEHURST** |

**MEMORANDUM IN SUPPORT OF
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT
THAT ROCKHILL EXCESS POLICY IS ILLUSORY
IF SUBSIDENCE EXCLUSION IS APPLIED**

**MAY IT PLEASE THE COURT:**

J. M. Drilling has previously filed a Motion for Summary judgment asserting that the Rockhill Follow Form Excess insurance policy issued to J.M. Drilling provides coverage for the Thibodeaux claims and the Judgment obtained against J.M.

In the event that this Court denied J. M.'s Motion for Summary Judgment on the basis that the subsidence exclusion contained in the Rockhill policy excluded coverage, to it, J. M. files this Alternative Motion for Summary Judgment since any applicability of the subsidence exclusion to this particular loss renders the Rockhill policy illusory as it would then provide no coverage for any of the business activities of J. M. Drilling.

**I.     INTRODUCTION**

The primary issue in this consolidated matter is whether Rockhill Insurance Company ("Rockhill") has an obligation to indemnify its insured, J. M. Drilling, LLC ("J. M.") for its liability in the state court lawsuit brought by the Thibodeaux family. Rockhill has denied coverage for

several reasons, one of which is its contention that the subsidence exclusion contained in its policy operates to exclude coverage for the underlying loss.

At all pertinent times, J. M. Drilling was insured under a primary Admiral Commercial General Liability policy CG00-01004-13 with policy limits of $1,000,000.00 per occurrence (Exhibit 1, Fact #1) and insured under a Rockhill Follow Form excess policy, policy number XSI RU 000621-03 with policy limits of $5,000,000.00 (Exhibit 2, Fact #2).

An insurance policy is said to be providing "illusory coverage" when the policy gives the policyholder the impression of coverage but, through an exclusion, any meaningful coverage is actually negated. The theory of illusory coverage holds that policies should be construed so that coverage is not a delusion to the insured. This doctrine may be an insured's only remedy to avoid an unreasonable result when a policy exclusion or limitation may otherwise unfairly deny coverage. Tennessee law has embraced this doctrine in appropriate cases. See for example, *Lineberry v. State Farm Fire & Casualty Ins.* 85 F. Supp. 1095 (M. D. Tenn. 1995). *Morrison v. Allen,* (M2007-91244 Supreme Court Tenn., 2/16/2011). *Williams v. State Farm Mutual Aut. Ins. Co.,* (Tenn. Court of Appeal. 2W019-00851, 11/20/2020).

Such is the exact case here where J.M., a company that Rockhill knew since 2011 performed underground work laying conduit, was sold an excess insurance policy that contained a subsidence exclusion that excluded coverage for "moving land or earth". It is extremely noteworthy and highlights why the Rockhill policy would be illusory and a "delusion to the insured" if the subsidence exclusion was applied that the Rockhill claims representative who denied that this policy afforded coverage to J.M. for the subject loss. testified that Rockhill knew that to perform its work, J. M. "had to move land or earth to put conduit underground". (Ex. 3, p.71).

As the primary Admiral policy had no such subsidence exclusion, J.M. Drilling was afforded less protection under the Rockhill excess policy than it had under the primary policy. Rockhill knew that J.M.'s business and contractual obligations to ATT to lay underground conduit necessitated "the movement of land or earth": thus applying the subsidence exclusion results in making all of J.M.'s operations excluded from coverage. Such cannot be allowed to stand.

## II. IT WAS NO SURPRISE TO ROCKHILL THAT J.M. DRILLING PERFORMED DRILLING OPERATIONS

J. M. Drilling, as its name implies, is engaged in the business of drilling and/or excavating. Rockhill has been providing excess insurance to J.M. since at least 2011. As of 2011, Rockhill knew and understood that J.M.'s business was boring underground for installation of conduit and that its work was 100 % underground. (Ex 4. p. 36, 37, 59, 60).

As part of the process of obtaining its insurance for the 2015-2016 period, J. M. Drilling was required to fill out and submit a Contractors Questionnaire both to Admiral (its primary insurer) and to Rockhill (excess insurer). The submitted questionnaire clearly identified the operations of J. M. Drilling as" directional drilling to install underground fiber optic cable". The percentage of construction work listed is 93% for drilling and 3% for excavation. (Ex. 5). Directional boring, also referred to as horizontal directional drilling (HDD), is a minimal impact trenchless method of installing underground utilities such as pipe, conduit or cables in a relatively shallow arc or radius along a prescribed underground path using a surface-launched drilling rig.

As testified to by Mr. John Moore, corporate representative of J. M. Drilling, J. M. Drilling's normal business operations of borehole drilling, digging and excavating necessarily involved "shifting, eroding, rising and other movement of land or earth". (Ex, 6 p.15-21, 24-27).

As mentioned above, Ms. Kasal knew that testified that J.M. "had to move land or earth to put conduit underground". (Ex. 3, p. 71)

**III. INSURANCE POLICIES RECOGNIZED NATURE OF J.M.'S OPERATIONS**

Both insurers accepted the Questionnaire and underwrote policies based in part on the information provided to them by J. M. The underlying primary Admiral policy does not contain a subsidence exclusion. (Ex. 1). The Rockhill Follow Form Excess policy does contain a subsidence exclusion. (Ex. 2, JMD000759)

The primary 2015-2016 Admiral policy contained a 'Business classification" for J.M. Drilling which lists "Line construction for telephone, telegraph and television" (EX 1, JMD000640). The Admiral Premium Classification lists "Conduit construction for cables or wires" (JMD000641).

The 2015-2016 Rockhill Follow-Form Excess Policy states that the 'Business of the named insured is: Line Construction" (Exhibit 2, JMS000741).

**IV. THE EXCLUSION MAKES THE POLICY ILLUSORY**

    **A. EXCLUSION**

The Rockhill Policy contains a subsidence exclusion which states in pertinent part that the policy will not apply:

> "to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributing to or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, lifting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable".

(Exhibit 2, JMD000759)

    **B. CAUSE OF THIBODEAUX INJURY**

Sometime between February and March of 2015, J. M. Drilling struck the sewer force main line with its excavator while performing digging operations on the utility lot, Lot 114. J.M. Drilling

employees never knew they struck and broke the sewer line and did not know that they needed to report a break in the sewer line. J. M. Drilling's negligent striking of the sewer line caused a break/separation to occur underground. The break caused the sewer line to leak. The leak caused a void/cavern to form. The void/cavern caused Thibodeaux's accident. Thibodeaux suffered a single accident on a utility lot located at 114 Meadowgate (Lot 114) in Sawgrass Subdivision in Lafayette Parish when the ground near AT&T equipment where he was working gave way, suddenly and without warning, causing injuries. Thibodeaux suffered no other accidents that day (Facts #3-12; Ex. 6, 7, 8, 9, 10).

### C. JURISPRUDENCE CONCERNING ILLUSORY POLICIES

Tennessee jurisprudence has long recognized the theory of illusory coverage. *Lineberry v. State Farm Fire & Casualty Ins.* 85 F. Supp. 1095 (M. D. Tenn. 1995). *Morrison v. Allen,* (M2007-91244 Supreme Court Tenn., 2/16/2011). *Williams v. State Farm Mutual Aut. Ins. Co.,* (Tenn. Court of Appeal. 2W019-00851, 11/20/2020).

J. M. Drilling paid a premium of $ 25, 475.00 for the coverage it thought it was getting under the Rockhill policy. (Ex. 2, JMD000741). By applying the subsidence exclusion to this loss, in effect J. M. would have paid that $25,745 to receive illusory coverage from Rockhill, which accepted J. M.'s premium without the corresponding requirement of providing coverage for a loss that resulted from J. M's operations of drilling/excavating. John Moore of J. M. Drilling testified that he would not have paid that premium for this policy if knew it did not provide coverage that he needed for J.M.'s business operations. (Ex, 6, p187).

By interpreting the exclusion in the manner argued for by Rockhill, the exclusion would apply to the mere act of putting a shovel in the ground, digging a hole, and then failing to cover it up. Given the potential applicability of the exclusion to the "shovel in the ground" occurrence, the

potential, if not actual, applicability of the exclusion to such an occurrence would clearly not be aligned with the indemnity coverage that J. M. believed it procured.

### 1. LINEBERRY IS ILLUSTRATIVE OF ILLUSORY POLICY

In *Lineberry,* the federal district court in a diversity matter that interpreted Tennessee law, found an exclusion in an insurance policy to be illusory and construed it against the insurer. The Plaintiffs contended that State Farm, having specifically insured them against losses caused by the invasion of the right to privacy, must both defend them against the claims presented in the lawsuits against them and indemnify them for any damages awarded to the claimants. State Farm contended it was not required to defend or indemnify against these claims because the losses were not the result of an "accident" and the claims fall within the policy's exclusion for intentional or expected acts.

The Plaintiffs contended that those exclusions resulted in contradictory coverage or coverage which was ambiguous or merely illusory. They argued that the policy's ambiguity should be construed against the drafter, State Farm, and in their favor. State Farm alleged that the insurance policy provisions were not contradictory and the coverage was not illusory, because an invasion of the right to privacy is not necessarily an intentional tort. If that were correct, the policy would not necessarily be ambiguous, as the policy would cover injuries resulting from unintentional invasions of the right of privacy and would exclude those which are intentional. 885 F. Supp. 1098.

The Court ultimately held that: "In the instant case, the umbrella policy expressly covered injuries resulting from invasion of the right of privacy, an inherently intentional tort, but excluded injuries which were intended or expected. Therefore, the Court finds the coverage is illusory, and the policy is ambiguous and must be interpreted against the insurer and in favor of the insured. See

*Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 885 (Tenn.1991) for the construing of an ambiguity. Thus, an insurance policy that provides only illusory coverage will be enforced so as to give effect to the reasonable expectation of the insured.

## 2. GREAT LAKES CASE AS PERUSASIVE AUTHORITY

In *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, the Indiana Court of Appeals employed a similar approach. Great Lakes manufactured pesticide products containing ethylene dibromide (EDB) and purchased liability insurance from International Surplus Lines Insurance Company. *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 849 (Ind.App.1994). After the Environmental Protection Agency banned the use of EDB, various parties brought claims for damages against Great Lakes claiming soil and groundwater contamination by EDB. The insurer denied coverage, arguing that EDB was a pollutant and that coverage was precluded by pollution exclusion clauses in the policy. The court explained:

Great Lakes, like most manufacturers, purchased liability insurance to protect itself from damage caused by its products. Here, because of the nature of the product and its intended use, the damage caused by EDB was environmental pollution. However, simply because the damage alleged in the underlying lawsuits is environmental damage does not mean that the pollution exclusion clauses should automatically apply to exclude coverage.... To hold that the pollution exclusion clauses bar coverage to Great Lakes for the EDB claims would render the insurance coverage purchased by Great Lakes illusory. We hold that under the facts of this case, the EDB claims against Great Lakes are not excluded by the policies' pollution exclusion clauses. Id. at 851.

## 3. REASONABLE EXPECTATIONS OF THE INSURED

As explained by Professor Keeton: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though

painstaking study of the policy provisions would have negated those expectations". Keeton, Insurance Law, § 6.3(a), p. 351...

An insured is entitled to recover his reasonable expectation when an insurer has provided illusory coverage. See for example *Western Reserve Mut. Casualty Co. v. Holland,* 666 N.E.2d 966, 970 (Ind.App.1996)

By giving effect to the subsidence exclusion this Court would hold that, in essence, J. M. was sold a policy that provided no coverage for its drilling/excavation business operations whixh is all it does. Therefore, J. M. would have purchased an insurance policy and paid over $25,000 in premiums for coverage which would not pay benefits under any reasonably expected set of circumstances.

As testified to by Ms. Kasal, the subsidence exclusion "excluded any liability which arose in any way from movement of land or earth". (Ex. 3, p. 71). Further, she responded that although "every claim is different", she testified that in this specific situation, the subsidence exclusion would generally exclude all liability for all operations of this company in their boring and drilling business. (Ex. 3, p.122)

During the corporate deposition of J.M. Drilling, John Moore provided the following testimony as to what he expected his insurance to cover:

I needed to procure insurance to meet the requirements of my contracts (Ex. 6 p.35. 43, 45);

I tell them what I needed and it's their job to make sure I got coverage (50);

Need them to make sure that we are covered (p.73, 74);

He expected to have coverage for every business risk of his operation (183) and

He would have asked for the subsidence exclusion to be removed if it excluded coverage he needed (153).

## V. PERSUASIVE AUTHORITY PERTAINING TO SUBSIDENCE EXCLUSIONS AND DRILLING CONTRACTORS SUCH AS J.M. DRILLING

The case of *United Nat'l Ins. Co. v. Assurance Co. of America*, 2012 WL 1931521 (D. Nev., 2012) is directly on point as persuasive authority. The insurer attempted to apply the subsidence exclusion in that case to an insured who was in the "rough grading and earthwork services" business. The thrust of the Court's denial of the applicability of the subsidence exclusion was that:

> "However, it would be unreasonable to conclude that R.B. Peterson, a grading contractor that moves land as its business, would consider this language to exclude all of its grading and construction work (and resulting damage) to be excluded from the insurance policy it purchased. If so, it would have been entirely illogical to purchase the policy in the first instance. Therefore, this could not have been R.B. Peterson's intention (or National Fire's original intention for that matter, assuming it dealt with R.B. Peterson in good faith)."

In *Broom v. Wilson Paving & Excavating, Inc.*, 356 P.3d 617, 2015 OK 19 (Okla., 2015), the Court held that "We agree with the reasoning of the court in *United Nat. Ins.* and conclude that it is highly unlikely that Wilson Paving, a company whose business involves "excavation, tunneling, underground work [and] earth moving," would have purchased the policy with knowledge that it would not cover losses to property or injuries to persons other than employees due to man-made earth movement.

The Court held that:

> "The record clearly demonstrated that Wilson Paving expected coverage in a situation such as this. In Wilson Paving's application for commercial general liability insurance, the insurance agent noted that the schedule of hazards included "Grading of Land," and specifically noted Wilson Paving's operations included "excavation, tunneling, underground work [and] earth moving". Mid–

> Continent's policy describes the nature of Wilson Paving's business as "paving [and] excavating contractor," and the premium audit summary and final audit invoice dated June 8, 2007, which was used in determining the premium for the policy, described Wilson Paving's operations as "dirt work/site excavating/building pads commercial."

Like Wilson Paving and its insurer, J.M.'s insurer had the schedule of hazards and knew the type of operations and business J.M. conducted. J.M. expected to be covered for those operations and J. M. certainly did not expect that it would not be covered for liabilities arising out of the only business operations it conducts-movement of land or earth. As per Wilson paving: "[i]f this exclusion applies to injury related to excavation of ditches or any excavation or paving work, then Wilson Paving paid $34,394.00 for no insurance coverage because all of its operations necessarily 'arise out of, are caused by, result from, contribute to, are aggravated by, or are related to ... movement of land, earth or mud".

## VI.  CONCLUSION

Any application of the subsidence exclusion to the J. M. policy with Rockhill renders that policy illusory. It is unreasonable to conclude that J.M. Drilling, which by its very name implies drilling operations, and which moves land or earth as its business, would consider this subsidence exclusion language to exclude all of its grading and construction work (and resulting injury or damage) from the excess insurance policy it purchased. If so, it would have been entirely illogical to purchase the policy in the first instance. Therefore, this could not have been J. M.'s intention when it purchased the policy.

The subsidence exclusion renders the policy illusory and it should not be given an effect that is/was contrary to the reasonable expectations of J.M. Drilling that it had insurance coverage for this type of loss.

       Respectfully submitted:

       **RABALAIS & HEBERT**

       *s/ Melvin A. Eiden*
       _____
       **MELVIN A. EIDEN (#19557) TA**
       **BLAKE T. COUVILLION (#37443)**
       **701 Robley Dr., Suite 210**
       Lafayette, Louisiana 70503
       (337) 981-0309
       **ATTORNEY FOR DEFENDANT,**
       **J. M. DRILLING, LLC.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing has this day been forwarded as follows:

|     |                              |
|-----|------------------------------|
| --- | U.S. Mail (First Class)      |
| --- | Hand Delivery                |
| --- | Facsimile                    |
| --- | Overnight Delivery           |
| X   | E-Mail – All Known Counsel   |

Lafayette, Louisiana on this 29TH day of March, 2021.

       *s/ Melvin A. Eiden*
       _____
       **MELVIN A. EIDEN**