**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **JOHN THIBODEAUX, ET AL** | * | **NO.:  6:18-CV-00501-RRS-CBW** |
| | | **NO.:  6:18-CV-01414-RRS-CBW** |
| | * | |
| **VERSUS** | | **JUDGE:** |
| | * | **ROBERT R. SUMMERHAYS** |
| | | |
| | * | **MAGISTRATE JUDGE:** |
| **J.M. DRILLING, LLC, ET AL** | | **CAROL B. WHITEHURST** |

---

**CRC INSURANCE SERVICES, INC.'S**
**MEMORANDUM IN OPPOSITION TO MOTION IN LIMINE**
**TO EXCLUDE EXPERT TESTIMONY OF TY SAGALOW**

---

**NOW INTO COURT**, through undersigned counsel, comes Defendant, CRC Insurance Services, Inc. ("Insurisk")[1], who submits this Memorandum in Opposition to the Motion in Limine to Exclude Expert Testimony of Ty Sagalow, which was filed by Plaintiffs (Rec. Doc. 247), and joined by Defendant, JM Drilling, LLC (Rec. Doc. 258).  For the reasons set forth herein, the motion should be denied, and Ty Sagalow should be permitted to testify as to his full report and opinions.

**INTRODUCTION**

The primary issue before the Court in this litigation is whether a commercial excess general liability insurance policy issued by Rockhill Insurance Company ("Rockhill") provides coverage

---

[1] For clarity, CRC submits that on July 2, 2018, Regions Insurance, Inc. (including its trade name, Insurisk Excess and Surplus Lines became part of CRC. During the time periods at issue in this litigation, Insurisk and CRC were two independent and unrelated entities which, as a result of the July 2, 2018 transaction, were combined into one surviving entity – CRC.  For purposes of this litigation, the claims set forth relate to the alleged errors or omissions of Insurisk prior to the July 2, 2018 transaction, and not claims for independent negligence of CRC prior to the July 2, 2018 transaction. Consequently, CRC, as successor in interest to the entity identified as Insurisk, shall be referenced herein as **Insurisk**.

1

to its insured, JM Drilling, LLC ("JM Drilling"), in order to satisfy a judgment in favor of the Plaintiffs relating to a June 9, 2015 accident in which plaintiff John Thibodeaux was injured.

The coverage issue is the subject of multiple motions for summary judgment, all of which are pending ruling by the Court.  In the event there is no coverage under the Rockhill Policy (and Insurisk avers that there is coverage), there are other claims among some of the parties that will continue to be litigated.

Specifically, Plaintiffs and JM Drilling have made claims against Insurisk, the wholesale insurance broker (and co-defendant Insight Risk Management, LLC, the retail insurance agent) for negligence, negligent misrepresentation, failure to procure appropriate and adequate insurance coverage, and breach of fiduciary duty, all of which – they claim – arises out of the procurement of the Rockhill Policy for JM Drilling.

Plaintiffs and JM Drilling seek to exclude and strike just a small portion of the testimony of Ty Sagalow, an expert proffered by Insurisk – solely as to Mr. Sagalow's opinions as to any fault of JM Drilling in the procurement of the Rockhill Policy, and for no other reason.  And in fact, Plaintiffs and JM Drilling seek only to exclude very limited text of Mr. Sagalow's overall report, namely portions of pages 29-30 and 49-50.  Neither Plaintiffs nor JM Drilling seek to exclude any other opinions of Mr. Sagalow, nor any other pages of his full fifty-page report as to any other issue.

Plaintiffs aver that Mr. Sagalow's opinions as to the liability of JM Drilling should be excluded because they are: (1) not reliable since his opinion is contrary to all undisputed facts; (2) not reliable since it is contrary and inconsistent with Tennessee law regarding the parties' various duties; and (3) not reliable because he has no reliable methodology under Tennessee law to support his opinion that JM Drilling was comparatively at fault in its procurement of the Rockhill Policy. Plaintiffs and JM Drilling are mistaken on all three counts, and their motion should be denied.

Neither Plaintiffs nor JM Drilling contest Mr. Sagalow's qualifications, nor can they reasonably do so when considering Mr. Sagalow's more than 37 years of being employed within the insurance industry, including as a Chief Underwriting Officer, Chief Operating Officer, Chief Innovation Officer, and a licensed insurance broker in all 50 states.  Mr. Sagalow also currently serves as Chief Insurance Officer for an insurance agency and Managing General Agency, as well as provides consulting services to the insurance industry.[2]  Thus, Plaintiffs and JM Drilling concede that Mr. Sagalow possesses the requisite scientific, technical, and specialized knowledge that will aid the jury.  Moreover, Mr. Sagalow's opinions are both reliable and relevant because they are fundamentally supported by sound judgment, methods, and case-specific information. Plaintiffs and JM Drilling simply disagree as to the facts upon which Mr. Sagalow relies for his opinions.  Plaintiffs and JM Drilling also base their motion on an erroneous and overly broad interpretation of case law regarding the duties of an insured and agents/brokers under Tennessee law.  Therefore, their arguments are not the proper focus of a *Daubert* inquiry.

## FACTUAL AND PROCEDURAL OVERVIEW

All of the various parties to this dispute previously filed Motions for Summary Judgment on the issue of coverage and all have extensively set forth the facts this dispute.  In the interest of judicial economy, Insurisk will not recite all of the relevant facts here, and instead directs the Court to its Statement of Undisputed Material Facts for the facts related to the coverage issue (Rec. Doc. 270-2), as well as any supplemental facts outlined within this memorandum.

---

[2] **Exhibit A** – Curriculum Vitae of Ty Sagalow.

## LAW AND ARGUMENT

The district court has considerable discretion to admit expert testimony under Federal Rule of Evidence 702.[3]  This rule codifies the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* which requires district courts to act as a "gatekeeper" to determine whether all expert testimony should be admitted.[4]  Under Rule 702, a proposed expert's opinion is admissible, at the discretion of the trial court, if the proponent of the expert testimony satisfies three requirements: (1) the expert is qualified; (2) the testimony is relevant; and (3) the testimony is reliable.[5]  The court's role as a gatekeeper, however, does not replace the traditional adversary system and the place of the jury within the system.[6]  As the *Daubert* Court noted, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence.[7]

In the instant matter, both Plaintiffs and JM Drilling attempt to strike what amounts to just over one page of combined text from Mr. Sagalow's fifty-page report for effectively three reasons: (1) Plaintiffs and JM Drilling misapply Tennessee law in an effort to strike Mr. Sagalow's testimony; (2)  Plaintiffs and JM Drilling ignore facts established through discovery in these proceedings that support Mr. Sagalow's opinion that JM Drilling has liability in its procurement of insurance should coverage not be afforded; and  (3) Plaintiffs and JM Drilling misconstrue Mr. Sagalow's methodology in expressing his opinions.  This motion should be denied for the reasons that follow.

---

[3] *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 514 (E.D. La. Apr. 11, 2002) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 138–39, 141–42 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000)).
[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *See also General Electric Co. v. Joiner,* 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).
[5] *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007).
[6] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[7] *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

A.   **PLAINTIFFS AND JM DRILLING MISINTERPRET AND MISAPPLY TENNESSEE LAW AS TO THE DUTIES OF THE VARIOUS PARTIES, AND MR. SAGALOW'S OPINIONS WILL ASSIST THE JURY ON THESE ISSUES.**

Plaintiffs and JM Drilling erroneously argue  that Mr. Sagalow's opinions as to the liability of JM Drilling in the procurement of insurance run afoul of Tennessee law as to three points.  It is on these grounds that they challenge Mr. Sagalow's ability to testify on the issue of JM Drilling's comparative fault (though they do not challenge Mr. Sagalow on any other issues, or on his qualifications).  Plaintiffs and JM Drilling are incorrect on all three counts and Mr. Sagalow's opinions on this issue may be instructive to the jury.  Critically, neither Plaintiffs nor JM Drilling sought to depose Mr. Sagalow regarding his opinions, thus they have foregone the opportunity to cross-examine him on his opinions via discovery.

1.   **Under Tennessee law, JM Drilling had a duty to read its policy and is presumed to know its contents.**

a.   **Plaintiffs and JM Drilling misapply Tennessee law in an effort to strike portions of Mr. Sagalow's report.**

Despite the contentions of Plaintiffs and JM Drilling, Tennessee law provides that an insured has a duty to read the insurance policy and is conclusively presumed to have full knowledge of its contents.[8]  Tennessee courts have consistently held that, absent fraud or misrepresentation, an insured who signs a policy of insurance is presumed to have knowledge of the contents of that policy.[9]  Further, when an insured signs but fails to read the contract or otherwise ascertain its provisions, he or she "will be conclusively presumed to know the

---

[8]   *See Kiser v. Wolfe,* 353 S.W.3d 741, 749 (Tenn.2011); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn.2001)

[9]   *See Giles v. Allstate Ins. Co.,* 871 S.W.2d 154, 156–57 (Tenn.Ct.App.1993) (quoting *Beasley v. Metro. Life Ins. Co.,* 190 Tenn. 227, 229 S.W.2d 146 (1950)); *see also De Ford v. Nat'l Life & Accident Ins. Co.,* 182 Tenn. 255, 185 S.W.2d 617, 621 (1945); *Montgomery v. Reserve Life Ins. Co.,* 585 S.W.2d 620, 622 (Tenn.Ct.App.1979); *Hardin v. Combined Ins. Co. of Am.,* 528 S.W.2d 31, 37 (Tenn.Ct.App.1975).

contents."[10]  An insured cannot claim that he is not bound by an insurance contract because he is ignorant of its provisions.[11]

Contrary to these well-established principles of law in Tennessee, Plaintiffs and JM Drilling espouse the insupportable position that Tennessee is a "no-read" state to justify JM Drilling's failure to read its policy to determine whether it had the appropriate coverage.  Under Tennessee law, in the context of a failure to procure case, courts consider whether the insured read the policy, and whether the agent made representations in terms of coverage that were contrary to the policy.  Critical in this case is the uncontested fact that Insurisk made no promises or representations to Plaintiffs nor JM Drilling.  Indeed, Insurisk never spoke to any Plaintiff nor to anyone at JM Drilling. Mr. Sagalow's opines that in conformance with the usual and customary insurance industry standards, Insurisk – as the wholesale broker - had no responsibility to inform JM Drilling about its coverage. Thus, Plaintiffs and JM Drilling's reliance on their misconstruction of Tennessee law is inapposite, and because Mr. Sagalow's opinion will be instructive to the jury, this portion of his opinion should be presented to the jury.

Plaintiffs and JM Drilling primarily rely upon *Morrison v. Allen*[12] and *Allstate Ins. Co. v. Tarrant*[13] in support of their contentions.  In *Morrison*, the insurer denied life insurance benefits to the insured's beneficiary based upon an alleged misrepresentation in the policy application.  The insured then filed suit against the agent alleging a claim for failure to procure the appropriate coverage.  In its defense of the case, the agent alleged that the insured did not read the application for the insurance policy, thus the agent claimed, it should be a bar to recovery.  In finding in favor of the plaintiff, the court analyzed the question of whether the insured should have read the

---

[10]  *Beasley,* 229 S.W.2d at 148.
[11]  *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn.2001).
[12]  *Morrison v. Allen*, 338 S.W.3d 417 (Tenn. 2011).
[13]  *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508 (Tenn. 2012).

application, holding that the determination of whether the failure to read bars recovery is ***a fact-intensive inquiry***.[14]   In *Morrison*, it was clear that the application was completed solely by the retail agent, and that the retail agent either included information that it knew was incorrect based upon representations by the insured, or failed to obtain correct answers from the insured for other questions on the application.   Thus, the court concluded that the failure to read alone was not sufficient to defeat the failure to procure claim; rather, the analysis turned on a fact-intensive inquiry hinging on what the retail agent promised and the actions taken by the insured's retail agent.  In stark contrast, here, JM Drilling has confirmed that it never relied on any representations of Insurisk in deciding to accept Rockhill's policy.[15]

In *Tarrant*, the court was called upon to decide a failure to procure case where the insured made a specific request to the agent to keep a vehicle on a commercial auto policy, yet the retail agent moved the vehicle to a personal auto policy that contained lower liability limits despite the insured's request.  After making the policy change, several documents outlining various aspects of insurance coverage were sent to the insured which the insured did not review thoroughly. Nevertheless, the court in *Tarrant* held that the case was not a "failure to read" case, "but one in which the insured instructed his insurance agent to make a change in the insured's insurance coverage, and the agent made a mistake in carrying out the instruction."[16]  Thus, like *Morrison*, the issue was a fact-intensive inquiry, and the retail agent could not defend its case solely on the issue of whether the insured read the application or policy, but that failure to read was indeed part of that inquiry which again involved whether the actions of the agent were inconsistent with its representations and whether the retail agent's actions contradicted its promises to the insured.

---

[14]   *Morrison*, at 429.
[15]   **Exhibit C** - Deposition excerpts of JM Drilling, p. 131, lines 14 – p. 134, line 10.
[16]   *Tarrant*, at 522.

This premise of the inquiry turning on what the agent promised and represented is also the legal underpinning of the two other cases cited by Plaintiffs and JM Drilling, *Bell v. Wood Ins. Agency*,[17] and *Brewer v. Vanguard Insurance Co.*[18]

Of equal importance is that cases cited by Plaintiffs must be viewed within the context of Tennessee's statutory presumption relating agents and brokers in a failure to procure case found at Tennessee Code Annotated section 56-7-135(b).  Section 56-7-135(b) provides that "the payment of premium for an insurance contract, or amendment thereto, by an insured shall create a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract."[19]  T.C.A §56-7-135(b) serves as a burden shifting statute.  It creates a rebuttable presumption that, by paying the insurance premium, an insured has accepted the coverage provided under the contract.[20]  But, the insured rebuts the presumption only through presenting evidence that the agent made some representation with which it failed to comply.  This significant protection afforded agents and brokers was recently affirmed by the Tennessee Supreme Court in *Parveen v. ACG South Insurance Agency, LLC,*[21] wherein the Court held that this presumption applies to agents and brokers in the context of a claim for failure to procure.  This very issue is the subject of  Insurisk's Motion for Summary Judgment (Rec. Doc. 274).

This statutory and jurisprudential framework therefore makes clear that under Tennessee law an insured has a duty to read its policy, is presumed to know the contents of the policy, and once the premium is paid, the insured has accepted the coverage provided under the policy.

---

[17]   29 S.W.2d 153, 154 (Tenn. Ct. App. 1992).
[18]   614 S.W.2d 360 (Tenn.App.1980).
[19]   *Parveen v. ACG South Insurance Agency, LLC*, 2020 WL 7086157, --- S.W.3d--- (Tenn. 2020). Parveen is the most recent application of Tennessee statutory authority to negligent procurement matters with the decision issued on December 12, 2020.  Such decision was rendered in favor of the insurance agent who was represented by firm colleagues of undersigned counsel.
[20]   *Harris v. Nationwide Mut. Fire Ins. Co.*, 92 F.Supp.3d 736, 746 (M.D. Tenn. 2015).
[21]   2020 WL 7086157, --- S.W.3d--- (Tenn. 2020).

Absent some sort of misrepresentation or fraud on behalf of the agent, or some sort of promise or representation as to the scope of coverage contrary to the policy, the insured consented to the terms of the policy.

Mr. Sagalow, as a licensed insurance producer in the state of Tennessee, and as an expert with regard to insurance custom and practice pertaining to agents and brokers in the procurement of insurance, with over 37 years of experience, is entitled to rely on these canons of Tennessee law in rendering his opinion as to the comparative fault of JM Drilling and he has done so.[22]  The fact that the Plaintiffs and JM Drilling differ as to their interpretation of the standards of the industry is of no moment, and Mr. Sagalow should be permitted to fully testify to assist the jury.

**b.     There are more than enough facts in this case that support Mr. Sagalow's opinion that JM Drilling is comparatively at fault.**

Plaintiffs and JM Drilling devote a substantial portion of their brief outlining its version of the facts of this case, and further claim that Mr. Sagalow's opinion is in conflict with those facts. The issue here is obvious – the facts in the instant motion are the Plaintiffs' "interpretation" of a limited number of facts, and certainly neither comport with Insurisk's view of the material facts nor include all facts that Insurisk considers material.  Tens of thousands of documents have been produced and more than fifteen different witnesses have been deposed.  In reaching his opinion, Mr. Sagalow relies upon facts he determined to be material and which have been made part of the case through discovery.  Additionally, Mr. Sagalow views of the standards of care for agents that are usual and customary in the insurance industry differ from counsel for both Plaintiffs and JM Drilling.

---

[22]  See **Exhibit B** – Expert Report of Ty Sagalow.

Mr. Sagalow's opinion as to the comparative fault of JM Drilling should not be stricken; rather, it should be presented to the jury, and able counsel for both Plaintiffs and JM Drilling can cross-examine Mr. Sagalow on those facts at trial.

Indeed, the United States Fifth Circuit has held that when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts, and a trial court should not exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.[23]  Further, the trial court's role as gatekeeper under *Daubert* is not intended to serve as a replacement for the adversary system.[24]  Rather, as *Daubert* makes clear, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence.[25]  Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.[26]

In their motion, Plaintiffs and JM Drilling cite multiple cases for the proposition that because Mr. Sagalow's opinion on the comparative fault of JM Drilling has no 'factual basis,' it is unreliable and should not be allowed.  However, the cases cited by Plaintiffs and JM Drilling simply do not apply here.  For example, they have cited *Guillory v. Domtar Indus., Inc.*, in which the court excluded an expert because his opinion was "not based upon the facts in the record but on altered facts and speculation."[27]  They also cite to *Hathaway v. Bazany* in which an expert was excluded as the expert "does not, because he cannot, offer any specific factual support" for his opinions.[28]  Neither of these scenarios are present in Mr. Sagalow's report or his opinion.  To the

---

[23]  *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249 (5th Cir. 2002).
[24]  *Id*.
[25]  *Id*.
[26]  *Id*.
[27]  *Guillory v. Domtar Indus. Inc.,* 95 F.3d 1320, 1331 (5th Cir. 1996).
[28]  *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007).

contrary, there is sufficient factual support in the record of this case that support his conclusions.

For example, as to Insurisk:

- No one from JM Drilling had any communications, written or verbal, with anyone at Insurisk noting that, "[n]o, no one ever talked to them."[29]

- No one from JM Drilling contacted Insurisk regarding the procurement of insurance and no representations were made by Insurisk as to whether the Rockhill commercial excess policy provided adequate insurance coverage for JM Drilling.[30]

- Insurisk did not provide any advice, guidance, or recommendations to JM Drilling with regards to insurance coverage.[31]

- Insurisk did not provide any advice or guidance to JM Drilling as to whether any insurance policies issued to JM Drilling should provide coverage for subsidence.[32]

- Insurisk did not make any representations to JM Drilling about any expertise Insurisk might have with regard to procurement of insurance coverage for JM Drilling.[33]

- JM Drilling agreed there was no contract between JM Drilling and Insurisk to provide any services to JM Drilling.[34]

- JM Drilling had no expectation that anyone other than Insight would provide advice on whether JM Drilling should accept the insurance quotes.[35]

- JM Drilling did not believe Insurisk (or CRC) acted fraudulently in the procurement of insurance for JM Drilling.[36]

- JM Drilling fully paid its insurance premium for the Rockhill policy in 2015-2016.[37]

- JM Drilling's contract with AT&T was never provided to Insurisk.[38]

---

[29] **Exhibit C** - Deposition excerpts of JM Drilling, p. 131, lines 14 - 23.
[30] **Exhibit C** - Deposition excerpts of JM Drilling, p. 131, lines 14 – p. 134, line 10.
[31] **Exhibit C** - Deposition excerpts of JM Drilling, p. 132, line 5 – p. 134, line 9.
[32] **Exhibit C** - Deposition excerpts of JM Drilling, p. 132, lines 10 – 14.
[33] **Exhibit C** - Deposition excerpts of JM Drilling, p. 132, line 15 – p.133, line 1.
[34] **Exhibit C** - Deposition excerpts of JM Drilling, p. 140, lines 7-14.
[35] **Exhibit C** - Deposition excerpts of JM Drilling, p. 165, line 22 – p. 166, line 1.
[36] **Exhibit C** – Deposition excerpts of JM Drilling, p. 140, lines 2-6.
[37] **Exhibit C** – Deposition excerpts of JM Drilling, p. 116 line 20 – page 117, line 4.
[38] **Exhibit E** – Deposition of Akos Swierkiewicz, page 212, lines 17-24.

Moreover, there are additional facts that have been discovered relating to JM Drilling's communications with Insight that go to the heart of JM Drilling's comparative fault:

- JM Drilling never asked Insight for insurance coverage for subsidence or earth movement.[39]

- JM Drilling admitted that its insurance agent (MGM or Insight) never told JM Drilling that the company was covered for every possible risk.[40]

- JM Drilling admitted that Insight never made any promises about any specific coverages.[41]

- During this quoting process, Insight provided written insurance summaries to JM Drilling.[42]

- These annual insurance summaries often identified the presence of a subsidence exclusion in the primary and/or excess policies being quoted by Insight.[43]

- Even after receiving these summaries, JM Drilling never stated that it wanted a policy without a subsidence exclusion.[44]

- No one at JM Drilling ever questioned the coverage secured by Insight nor told Insight that JM Drilling did not want a subsidence exclusion or residential contracting exclusion on any of its liability policies.[45]

- John Moore testified that JM Drilling would "always question the price, but we never questioned the coverage."[46]

- Rather, JM Drilling simply paid the premiums and accepted the insurance as written.[47]

- JM Drilling's management team never read JM Drilling's insurance policies.[48]

---

[39] **Exhibit C -** Deposition excerpts of JM Drilling, p. 38, lines 12-16; p. 47, lines 12-17; p. 75, lines 16-24; p. 126, lines 2-8.
[40] **Exhibit C** - Deposition excerpts of JM Drilling, p. 178, line 1 - p. 179, line 1.
[41] **Exhibit C** - Deposition excerpts of JM Drilling, p. 177, lines 8-19.
[42] **Exhibit C** - Deposition excerpts of JM Drilling, p. 127, lines 1-4. **Exhibit D** (Deposition of Roy Wood): p. 49, lines 10-13.
[43] **Exhibit C** - Deposition excerpts of JM Drilling, pages 76-102; p. 127, lines 1-4.
[44] *Id.*
[45] **Exhibit C** - Deposition excerpts of JM Drilling, p. 47 lines 12-25 and p. 53, lines 9-25.
[46] **Exhibit C** - Deposition excerpts of JM Drilling, p. 53, lines 9-25.
[47] **Exhibit C** - Deposition excerpts of JM Drilling, p. 116, line 24 – p. 117, line 4.
[48] **Exhibit C** - Deposition excerpts of JM Drilling, p. 105, line 18 – p. 106, line 4; See also *Atl. Cas. Ins. Co. v. Norton,* 2015 U.S. Dist. LEXUS 35731 at 20 (E.D. Tenn. Mar 23, 2015) holding that the insured was conclusively presumed to have read, understood and assented to all provisions of the policy.

- Insight always sent JM Drilling copies of the bound policies (including the Rockhill policies),[49]

- JM Drilling always requested renewals of the Rockhill policies on the same terms and exclusions, including the subsidence exclusion.[50]

Clearly, these facts demonstrate the comparative fault of JM Drilling as asserted by Mr. Sagalow.  Critically, he has identified the fact that JM Drilling received the policy yet did not read it, and that it also fully paid the premium.  Both of these facts give rise to the presumption under Tennessee law and *Parveen* that JM Drilling accepted the terms of the coverage.  Further, Insurisk did not make any representations or misrepresentations to JM Drilling regarding coverage, nor does JM Drilling contend Insurisk acted fraudulently.  Thus, the potential comparative fault of JM Drilling in the procurement of its policies is fully supported by the facts as discovered in these proceedings, and Mr. Sagalow, utilizing his expertise and knowledge of insurance custom and practice, particularly in Tennessee where he is a licensed insurance producer, should be permitted to opine on this issue.   The motion of Plaintiffs and JM Drilling should be denied.

2. **Only the retail agent, Insight, has a fiduciary duty to JM Drilling, and the existence of this duty does not eliminate JM Drilling's comparative fault.**

Plaintiffs and JM Drilling claim that "Sagalow's expert report implies that a retail agent, such as Insight, can make mistakes in procuring the appropriate, requested coverage, and it is up to the insured to find the mistake and rectify it."[51]   From this, Plaintiffs and JM Drilling surmise, that Mr. Sagalow's opinion runs contrary to Tennessee law since Insight, as the agent for JM Drilling, has a fiduciary duty to JM Drilling.[52]

As an initial point, Plaintiffs and JM Drilling both concede that Insurisk does not owe a fiduciary duty to JM Drilling.  Further, the use of the term "implies" within Plaintiffs' memo

---

[49]  **Exhibit C** - Deposition excerpts of JM Drilling, p. 122, line 9 – p. 123, line 21.
[50]  **Exhibit C** - Deposition excerpts of JM Drilling, p. 175, line 21 – p. 176, line 9.
[51]  See Rec. Doc. 247-1 - Plaintiffs' Memo in Support, page 20.
[52]  *Id.*

regarding Mr. Sagalow's report is an interesting one, considering neither Plaintiff nor JM Drilling sought to depose Mr. Sagalow to fully determine the basis of his opinion as to that issue, thus Plaintiffs are left to speculate and offer mere conjecture about "alleged" implications of the report, rather than the actual conclusions of the opinion.

Plaintiffs and JM Drilling cite to the *Morrison* case to suggest that Mr. Sagalow's opinion is unreliable.[53]  However, while *Morrison* was a failure to procure case, nowhere in *Morrison* does it state that even if an agent is a fiduciary of an insured, that there cannot be comparative fault against the insured.   More importantly as to Insurisk, there is no language within *Morrison*, or any of the other cases cited by Plaintiffs and JM Drilling that the fact that a retail insurance agent may be a fiduciary of an insured, that the wholesale insurance broker cannot still argue the comparative fault of the insured in the procurement of the policy.

Further, as to the allegation that Mr. Sagalow is attempting to place a greater duty on JM Drilling than Insight, that is entirely incorrect.  Whether Insight is a fiduciary or not, that does not completely eliminate the potential for JM Drilling to be negligent.  And as set forth in significant detail above, there are more than sufficient facts upon which Mr. Sagalow may rely for his conclusions, most notably the fact that JM Drilling never read its policy, and that it fully paid the premium for the policy and therefore, under Tennessee law, accepted the terms therein. Mr. Sagalow's opinions are directly in line with Tennessee law and his opinion should be permitted.

**B.     TY SAGALOW'S METHODOLOGY AS TO THE COMPARATIVE FAULT OF JM DRILLING IS BASED UPON TENNESSEE LAW AND INSURANCE PRACTICE AND CUSTOM.**

Plaintiffs and JM Drilling assert that Mr. Sagalow's opinion as to JM Drilling's comparative fault is not reliable as there is no reliable methodology (i.e., Tennessee statues and

---

[53]  *Morrison v. Allen*, 338 S.W.3d 417 (Tenn. 2011).

case law).  However, as mentioned above, Tennessee law is clear that JM Drilling had a duty to read its policy, and further, that once JM Drilling paid its premium for the policy, it was presumed to have accepted the terms of coverage within that policy.  Further, Mr. Sagalow is the only expert in this case who is currently licensed as an insurance producer in Tennessee, and in fact is licensed in all 50 states.[54]

In his expert report, Mr. Sagalow takes JM Drilling to task for its failure to do what it is required to do under Tennessee law – read the policy.  JM Drilling admitted it never read the Rockhill policy.  Mr. Sagalow also places fault on JM Drilling for not raising any issues over the Subsidence exclusion with its retail agent, Insight.  Mr. Sagalow therefore concludes that "it is against insurance custom and practice to permit an insured to successfully argue that it had a reasonable expectation that it did not have a Subsidence exclusion on its excess program…"[55]

Mr. Sagalow's conclusion is entirely consistent with the holding of *Kizer*, supra, that an insured has a duty to read his or her policy and is conclusively presumed to have full knowledge of its contents,[56] as well as the *Webber* case, that held that an insured cannot claim that he is not bound by an insurance contract because he is ignorant of its provisions.[57]  This conclusion is also consistent with Tennessee law and the holding of *Parveen* in that the payment of a premium for an insurance contract by an insured shall create a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract.[58]  The insured must then present facts that rebut the presumption. Here, because JM Drilling has not, and indeed cannot given its

---

[54]  Interestingly enough, the expert of Plaintiffs and JM Drilling has ***never*** been licensed as an insurance producer in Tennessee or Louisiana.
[55]  Exhibit B – Expert Report of Ty Sagalow, page 50, paragraph 148.
[56]  *See Kiser v. Wolfe*, 353 S.W.3d 741, 749 (Tenn.2011); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn.2001)
[57]  *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn.2001).
[58]  T.C.A §56-7-135(b).  See also, *Parveen v. ACG South Insurance Agency, LLC,* 2020 WL 7086157, --- S.W.3d--- (Tenn. 2020).

uncontroverted testimony to the contrary, present any facts to rebut the *Parveen* presumption as to Insurisk. Mr. Sagalow's methodology is his examination of the duties and responsibilities of the agent and brokers, based upon his 37 years of insurance experience as a producer, the practice and custom in the industry, and applying these to the material facts of this case that he has taken from the record of this case.  Consequently, his opinions as to JM Drilling's comparative fault should be presented to the jury.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs' and JM Drilling's Motion in Limine to Exclude Expert Testimony of Ty Sagalow should be denied.

Respectfully submitted:

**ADAMS AND REESE LLP**

\_\_*/s/William D. Shea*_____
William D. Shea (#29419)
Susan N. Eccles (#29847)
Adams and Reese LLP
450 Laurel Street, Suite 1900
Baton Rouge, LA  70801
Telephone:  225.336.5200
Facsimile:  225.336.5220
Email:  william.shea@arlaw.com
Email:  susan.eccles@arlaw.com

*Attorneys for Defendant*
*CRC Insurance Services, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system on April 20, 2021.  Notice of this filing will be sent to all counsel of record via the Court's electronic filing system.


<u>/s/ William D. Shea</u>
William D. Shea