UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOHN THIBODEAUX ET AL | CASE NO. 6:18-CV-00501 LEAD |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| J M DRILLING L L C ET AL | MAGISTRATE JUDGE CAROL B. WHITEHURST |

MEMORANDUM RULING

The present matters before the Court are the (1) Motion for Summary Judgment on Insurance Coverage [ECF No. 215] filed by plaintiffs; (2) Motion for Summary Judgment on Insurance Coverage [ECF No. 234] filed by JM Drilling; (3) Insight Risk Management, LLC's Motion for Partial Summary Judgment on Insurance Coverage [ECF No. 251]; (4) Rockhill Insurance Company's Combined Cross-Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment on Insurance Coverage [ECF No. 254]; and (5) CRC Insurance Services, Inc's Motion for Summary Judgment on Issue of Insurance Coverage [ECF No. 270] (collectively, the "Summary Judgment Motions on Coverage").

I.
BACKGROUND

This case involves a dispute over whether an insurance policy issued by defendant Rockhill Insurance Company ("Rockhill") to defendant J.M. Drilling, LLC ("JM Drilling") covers a state court personal injury judgment obtained by plaintiff John Thibodeaux. The facts of the accident resulting in Thibodeaux's injuries are largely undisputed. JM Drilling was hired by AT&T to perform the drilling and excavating work involved in installing and burying fiber optic cables in

1

utility easements along roads and streets.[1] JM Drilling performed this work pursuant to a Master Commercial Contract with AT&T that covered projects in Louisiana, Mississippi, and Alabama.[2] In the present case, JM Drilling was drilling and excavating on a "utility lot" located in the Sawgrass Subdivision—a residential subdivision in Lafayette Parish, Louisiana—from February through March 2015.[3] During the course of this work, one of JM Drilling's excavators struck an underground sewer line, which caused the sewer line to separate and leak.[4] JM Drilling did not report the accident. On June 9, 2015, plaintiff John Thibodeaux was performing work on the same utility lot for his employer, Bellsouth Telecommunications, when the ground underneath Thibodeaux collapsed, and his leg and part of his body fell into a three-foot sinkhole—described by the state court as a "void" or "cavern."[5]

Mr. Thibodeaux and his wife, individually and on behalf of their minor children (collectively, "Thibodeaux") filed a lawsuit in the 15th Judicial District Court ("JDC"), Lafayette Parish, initially naming as defendants, Gulfgate Construction, LLC, Milton Water System, Inc., and Water & Wastewater Utilities, Inc.[6] The complaint was then amended to add J.M. Drilling as a defendant. In that amended complaint, Thibodeaux alleged that JM Drilling negligently pulled up and hooked the underground sewer force main underneath the utility lot while digging with a backhoe, causing the sewer force main to be pulled out of its connections and leak. This leak formed an underground void or cavern that collapsed and injured Thibodeaux.[7] All of the state court defendants except JM Drilling were dismissed on summary judgment.[8]

---

[1] Exhibit 16 to ECF No. 215, Deposition of John Moore, p. 16-17.
[2] *Id.* at p. 17.
[3] *Id.* at p. 24.
[4] Exhibit 2 to ECF No. 215, Louisiana Third Circuit Ruling, 17-495.
[5] *Id.*
[6] ECF No. 1, Complaint, Paragraph 9.
[7] *Id.* at 10
[8] *Id.* at 15

On March 21, 2018, the 15th JDC granted summary judgment in favor of Thibodeaux, ruling that, as a matter of law:

> JM Drilling is at fault for: 1) negligently striking the underground sewer force main at 114 Meadow Gate in February 2015; 2) negligently failing to contact the utility owner (Water and Wastewater) to have the broken underground sewer force main line fixed before continuing any work; and, 3) JM Drilling's negligence caused the underground void/cavern near AT&T PFP box and AT&T Handhole 1 which, in turn, caused John Thibodeaux's accident on June 9, 2015.[9]

After a jury trial solely on the question of damages, a jury awarded Thibodeaux damages totaling $3,698,118 plus legal interest and costs.[10] JM Drilling appealed, and the Louisiana Third Circuit Court of Appeals affirmed the summary judgment and the damage awards with a minor revision regarding loss of future earning capacity. The total judgment following that revision was $3,575,245. In its ruling the Third Circuit stated:

> The record contains sufficient evidence to make it clear that J.M. damaged the sewer line, which precipitated the leak, that caused the sinkhole.
>
> ***
>
> In our previous grant of summary judgment to Gulfgate, this court noted it was a break in "the main line, which caused the leak, which caused the washout, which formed the hole into which Thibodeaux fell and was injured.[11]

After the state court judgment was entered, the parties' disputes turned to insurance coverage. JM Drilling was covered by two relevant insurance policies: a primary general liability policy issued by Admiral Insurance Co. (the "Admiral Policy") and an excess liability policy issued by Rockhill (the "Rockhill Policy"). The Admiral Policy provided for a coverage limit of $1,000,000 per occurrence and an aggregate coverage limit of $2,000,000. The Rockhill Policy is a "Commercial Follow Form" policy with a coverage limit of $5,000,000. Admiral tendered its $1,000,000 policy limits plus judicial interest and costs after the state court judgment was entered.

---

[9] *Id.* at 16
[10] *Id.* at 17
[11] ECF No. 215-1, Statement of Material Facts, 37.

Rockhill, however, refused to tender payment, arguing that exclusions in the Rockhill Policy preclude coverage for Thibodeaux's judgment. Specifically, Rockhill asserts that two exclusions in the Rockhill Policy apply to Thibodeaux's damages: (1) the Subsidence Exclusion; and (2) Residential Contracting – Construction Defect Exclusion.

The coverage dispute resulted in two competing cases. First, Rockhill filed an action in Tennessee federal court on the eve of the damages trial in the 15th JDC.[12] In that case, Rockhill sought a declaratory judgment that the exclusions in the Rockhill Policy exclude coverage for Thibodeaux's injuries.[13] Thibodeaux subsequently commenced the present case in the Western District of Louisiana seeking a declaratory judgment that the Rockhill Policy covers his damages and that no exclusions to coverage apply.[14] The complaint named JM Drilling, Admiral, and Rockhill as defendants.[15] JM Drilling filed a crossclaim against Rockhill on the coverage issue and a third-party complaint asserting negligence against the agent and broker who procured the Rockhill Policy: Insight Risk Management LLC (agent) and CRC Insurance Services, Inc. (broker).[16] Rockhill's federal declaratory judgment action was then transferred to this court and consolidated with the present case.[17]

The parties subsequently filed a battery of motions and cross-motions for summary judgment. In the present ruling, the Court will address the arguments raised in the Summary Judgment Motions on Coverage.

---

[12] ECF No. 8-1.
[13] *Id.*
[14] ECF No. 1.
[15] Bell South was originally named as a defendant but was subsequently dismissed out of the case.
[16] ECF No. 112.
[17] ECF No. 23, 24 in Civil Action No.18-01414.

4

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[18] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[21]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[22] "Credibility determinations are not part of the summary judgment analysis."[23] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[18] Fed. R. Civ. P. 56(a).
[19] *Id.*
[20] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[21] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[22] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[23] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[24]

### B. Tennessee Law Governing Insurance Contracts.

Both Louisiana and Tennessee follow the *lex loci contractus* doctrine with respect to insurance coverage disputes and apply the substantive law of the state where the insurance policy was delivered.[25] The Rockhill Policy was delivered to JM Drilling at its principal office in Milan, Tennessee. Accordingly, the parties do not dispute that Tennessee law applies to the interpretation of the Rockhill Policy.

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language."[26] "Insurance contracts are subject to the same rules of construction as contracts generally, and, in the absence of fraud or mistake, the contractual terms should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties."[27] "In resolving disputes concerning contract interpretation, the task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language."[28]

There is no dispute that J.M. Drilling is the named insured under the Rockhill Policy and that the policy provides coverage for J.M. Drilling's negligent actions *unless* an exclusion applies. "An insurance company has the burden of proving that an exclusion in its policy applies to a

---

[24] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).
[25] *Lee v. Sapp*, 163 So.3d 60 (La. App. 2 Cir. 2015); *Champagne v. Ward*, 893 So.2d 773 (La. 2005); *Nelson v. Nelson*, 408 S.W.3d 629 (Tenn. App. 2013); *Stake v. Randolph*, 431 F.Supp.2d 782 (E.D. Tenn. 2006).
[26] *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012).
[27] *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009).
[28] *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. Ct. App. 2002) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

6

claim."[29] "It is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured."[30] This reflects the general rule that insurance contracts are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls.[31] These clauses should not, however, "be so narrowly construed as to defeat their evident purpose."[32]

### C. The Subsidence Exclusion.

Rockhill first argues that the subsidence exclusion in the Rockhill Policy precludes coverage for Thibodeaux's injuries. This exclusion states that the Rockhill Policy does not apply:

> to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributing to or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, lifting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.[33]

(the "Subsidence Exclusion"). Rockhill argues that the Subsidence Exclusion applies here because Thibodeaux's injuries were caused when he fell into a sinkhole. Rockhill argues that the formation of this sinkhole "emanate[d] from the operations of [JM Drilling]" and satisfies the definition of subsidence in the exclusion—namely "the subsidence, settling, expansion, sinking, slipping, falling away, lifting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth ...."[34] Thibodeaux, JM Drilling, Insight, and CRC rely on the "concurrent cause doctrine" to argue that there were two concurrent causes of Thibodeaux's injuries: JM Drilling's negligence in damaging the sewer line and the formation of the sinkhole as a result of the damage to the sewer

---

[29] *Interstate Life & Accident Ins. Co. v. Gammons*, 408 S.W.2d 397, 399 (Tenn. Ct. App. 1966).
[30] *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991).
[31] *State Farm Fire & Cas. Co. v. Salley* (E.D. Tenn. 2021).
[32] *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001).
[33] Exhibit 2 to ECF No. 234.
[34] *Id.*

7

line. They argue that, because JM Drilling's negligence in breaking the sewer line was a "substantial cause" of Thibodeaux's injuries and is a covered risk, the Subsidence Exclusion does not preclude coverage. Rockhill counters that the Rockhill Policy contains language—so-called "anti-concurrent cause" or "ACC" language—that prevents application of the concurrent cause doctrine to this case.

1. The Concurrent Cause Doctrine.

Under Tennessee law, the "concurrent cause doctrine" allows insurance coverage "where a non-excluded cause is ***a substantial factor*** in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy."[35] In other words, under the "substantial factor test," the entirety of the loss is covered if the covered cause was a substantial factor in causing the loss or damage.[36] The Tennessee Supreme Court's application of the doctrine in *Watts* is instructive. There, the plaintiff was injured by a pan of hot oil while replacing the brake pads on a truck at the home of a friend.[37] The plaintiff sought recovery under the friend's homeowners insurance policy but the policy excluded injuries resulting from the "maintenance…of any motorized of any land vehicle or trailer."[38] Nevertheless, the court concluded that the automobile exclusion did not apply to the plaintiff's injuries because they resulted from two concurrent causes, one of which was not excluded under the automobile exclusion.[39] Specifically, the plaintiff's injuries resulted when the homeowner failed to warn him that there was a pan of flammable oil in the vicinity of the truck and the plaintiff ignited the pan

---

[35] *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991) (emphasis added); *Clark v. Sputniks, LLC*, 368 S.W.3d 431 (Tenn. 2012).
[36] *Watts*, 811 S.W.2d 883.
[37] 811 S.W. 2d. at 884.
[38] *Id.*
[39] *Id.* at 888.

8

of oil when he used a welding torch to loosen the lug nuts on the truck.[40] The homeowner further acted negligently when he tried to move the burning pan of oil and spilled hot oil onto the plaintiff.[41] Even though the use of the welding torch in the vehicle repair (which was excluded under the homeowners policy) ignited the oil and thus "may have contributed in some form to the ultimate result," the homeowner's negligence (which was not excluded) was "a substantial factor in producing the damage or injury."[42] According to the court, coverage could not "be defeated simply because the excluded risks might constitute an additional cause of the injury."[43]

Here, in Thibodaux's state court proceeding, the 15th JDC and the state appellate court found, as a matter of law, that JM Drilling's negligence in rupturing the sewer line caused the condition that ultimately injured Thibodeaux—the sinkhole created when water leaking from the ruptured sewer pipe created a washed out area around the leak. The formation of the wash-out and the collapse of the ground into the sinkhole contributed to Thibodeaux's injuries. The sinkhole, standing alone, likely falls within Rockhill's Subsidence Exclusion. However, based on the undisputed facts in the record, JM Drilling's negligence was a substantial factor in causing Thibodeaux's injuries and is covered under the Rockhill Policy. It qualifies as a substantial factor because, absent JM Drilling's negligence, the sinkhole would not have formed, and Thibodeaux would not have been injured. Moreover, the fact that the excluded cause of injury—the sinkhole— occurred closer in time to Thibodeaux's injury and was the immediate cause of injury does not preclude JM Drilling's negligence from being a substantial factor in causing the loss.[44] The

---

[40] *Id.* at 885.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *State Farm Mut. Auto. Ins. Co. v. Nolen*, 857 S.W.2d 37, 40 (Tenn. Ct. App. 1993), citing *J.T. Hinton and Son v. Employers' Liab. Assurance Corp.*, 166 Tenn. 324, 62 S.W.2d 47 (1933) ("To justify recovery ... it is not necessary that the peril insured against be the cause of the loss in the sense that it is the nearest cause in point of time or place.")

undisputed facts thus establish that JM Drilling's negligence in rupturing the sewer line was "a substantial factor in producing" Thibodeaux's injuries.

  Rockhill, however, contends that the concurrent cause doctrine does not apply because JM Drilling's negligence did not "independently" cause Thibodeaux's injuries. Rather, JM Drilling's negligence only caused injury in combination with a cause excluded under the policy, namely the formation of the sinkhole. Rockhill relies heavily on two Tennessee federal circuit and district court cases to support its argument, *Capitol Indem. Corp v. Braxton*[45] and *Auto-Owners Ins. Co. v. England*.[46] In *Braxton*, the circuit court stated that Tennessee's concurrent cause doctrine allows coverage "where a non-excluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy."[47] The court also observed that the doctrine applies where the "loss is essentially caused by an insured peril with the contribution of an excluded peril merely as part of the chain of events leading to the loss."[48] In applying the doctrine to the facts of that case, however, the court suggested that the covered cause of an injury had to *independently* cause the injury for the doctrine to apply. There, the exclusion at issue was an automobile exclusion.[49] A child transported in a daycare van died of heat exposure when the child was left all day in the van.[50] According to the court: "The insureds' failure to take roll, count heads, implement procedures to ensure that children were accounted for, or properly train their employees, would not have caused Brandon's death *independent of the use of the van*."[51]

---

[45] 24 F. App'x. 434 (6th Cir. 2001).
[46] 2013 WL 3423817 (E.D. Tenn. 2013).
[47] 24 F. App'x at 440.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.* (emphasis added).

In *England*, the court simply stated that "the concurrent cause doctrine has no application when the alleged non-excluded cause would not—independent of the excluded cause—have caused the injuries."[52] The *England* court did not cite *Watts* or any other Tennessee state decision in fashioning this rule. Rather, the court cited only to the circuit court's unpublished decision in *Braxton*.

Rockhill's reliance on *Braxton* and *England* is misplaced for at least two reasons. First, Rockhill's reading of these cases is not consistent with Tennessee law on the concurrent cause doctrine. Neither *Watts* nor its progeny require that the cause covered by the policy result in the loss *independent* of a cause that is excluded by the policy. Indeed, such a requirement is at odds with *Watts*' holding that "coverage cannot be defeated simply because the excluded risks might constitute an additional cause of the injury."[53] Moreover, *Watts* and its progeny do not require that the covered cause of a loss be the "efficient and predominate cause" cause of the loss.[54] Rather, Tennessee law requires only that the covered cause be *a substantial factor* in producing the loss.

Second, while the courts in *Braxton* and *England* refer to whether a covered cause of loss is an "independent cause" of that loss, they still appear to be applying *Watts*' formulation of the substantial factor test and, in both cases, concluding that the covered actions of the insured were not substantial factors in causing the injuries.[55] Any other reading of *Braxton* and *England* would be inconsistent with Tennessee law. Here, unlike in *Braxton* and *England*, JM Drilling's negligence was a substantial factor in causing Thibodeaux's injuries.

---

[52] 2013 WL at *3.
[53] *Id.*
[54] *See State Farm Fire & Cas. Co. v. Salley*, 2021 WL 918760 at *7 (E.D. Tenn. March 10, 2021) (questioning whether *Braxton* and *England* conform to Tennessee law given that the Tennessee Supreme Court expressly rejected the "efficient and predominant cause" standard applied in those cases).
[55] In *Braxton*, at least, the court states that it is applying the substantial cause test. 24 F. App'x at 440.

11

Finally, Rockhill argues that Thibodeaux and JM Drilling are relying on a "chain of events" theory that was purportedly rejected by the Tennessee Supreme Court in *Watts*. The Court disagrees. In *Watts*, the Tennessee Supreme Court rejected the intermediate appellate court's reasoning that if any excluded cause "set[s] in motion the chain of events that produced the eventual result," the loss is excluded even if a covered cause was a substantial factor in causing the loss.[56] The court rejected this analysis because, in the court's words, it "appears to hinge on a 'but for' theory of causation" and not the substantial factor rule adopted by the court.[57] The court thus "specifically rejected the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury."[58] In short, the court appears to be merely reiterating the "substantial factor" formulation of the concurrent cause doctrine.

2. The ACC Exclusion.

Rockhill next argues that, even if Thibodeaux's injuries resulted from concurrent causes, the concurrent cause doctrine does not apply because the Subsidence Exclusion in the Rockhill Policy contains "anti-concurrent cause" ("ACC") language. An insurer may contract around the application of the concurrent cause doctrine by expressly including ACC language in the insurance policy. ACC language expressly excludes coverage for damage that is caused in any manner by an excluded cause regardless of any other concurrent or contributing causes that may be covered.[59] However, as with any exclusions in an insurance policy, "when provisions that purport to limit

---

[56] *Watts*, 811 S.W.2d at 887.
[57] *Id.*
[58] *Id.* at 888; *see also Penn-Star Ins. Co. v. Willis*, 2006 WL 2105993 (Tenn. Ct. App. 2006) (where multiple events may have caused an injury and one of those events is excluded from insurance coverage, there is coverage if a covered event was a substantial factor in causing the damage).
[59] *See Front Row Theater, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir. 1994); *Hardy v. Kelly LLC v. QBE Ins. Corp.*, No.3-11-0155, 2012 WL 1744670, *3 (W.D. Tenn. May 16, 2012).

insurance are ambiguous ... they must be construed against the insurance company and in favor of the insured."[60] Insurance carriers have developed model ACC language that has been approved as effective by some courts. A common formulation of this model ACC language is: "[w]e do not insure for such regardless of: a) the cause of the excluded event; b) *other causes of the loss*; or c) whether *other causes acted concurrently* or in any sequence with the excluded event to produce the loss."[61] This model language expressly refers to "concurrent" causes, and thus expressly states the insurer's intent to eliminate the concurrent cause doctrine.

The Subsidence Exclusion in the Rockhill Policy does not include the standard ACC language or any express reference to excluding "concurrent or contributing" causes. While use of the standard ACC language is not mandatory, the policy language must reflect the parties' intent to eliminate covered concurrent causes—and, hence, the concurrent cause doctrine—as a basis for coverage where an excluded cause contributed to the loss. Even though the Subsidence Exclusion does not include standard ACC language, Rockhill argues that its inclusion of terms such as "direct or indirect," "arising out of," and "contributing to or aggravated by" is sufficient to disclaim the concurrent cause doctrine. The Court disagrees for at least two reasons. First, the language in the Subsidence Exclusion cited by Rockhill defines when a loss falls within the exclusion but, unlike the standard ACC language, does not address the effect of other *covered* causes that may be substantial factors in causing a loss. Specifically, unlike standard ACC language, Rockhill's Subsidence Exclusion does not reference "concurrent or contributing" causes. At best, the Subsidence Exclusion is ambiguous as to whether Rockhill intended to disclaim Tennessee's

---

[60] *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 773 (Tenn. 2004). *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).
[61] Andrew B. Downs & Linda M. Boulduan, *Law and Practice of Insurance Coverage Litigation*, Section 52:9 (West 2016) (emphasis added).

13

concurrent cause doctrine with respect to that exclusion and, under Tennessee law, any such ambiguity must be construed in favor of coverage. [62]

Second, Rockhill's argument that it intended to disclaim Tennessee's concurrent cause doctrine in the language of the Subsidence Exclusion does not reflect how it drafted other exclusions in the same policy. Specifically, the Rockhill Policy includes express ACC language in several other coverage exclusion provisions in the policy but not in the Subsidence Exclusion. For example, both the Fungi Exclusion (Number 19) and the Silica Exclusion (Number 22) contain the following ACC language: "regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage."[63] Similar language is also included in the Organic Pathogen Exclusion found in the Endorsements attached to the policy.[64] Again, at best, the omission of express ACC language in the Subsidence Exclusion when Rockhill uses express ACC language in other exclusions in the same policy creates an ambiguity as to whether the Subsidence Exclusion disclaims Tennessee's concurrent cause doctrine. Again, this ambiguity must be construed in favor of coverage.

In sum, based on the undisputed facts in the summary judgment record, JM Drilling's negligence was a substantial factor in causing Thibodeaux's injuries. Absent JM Drilling's negligence, there would have been no sinkhole and no injury would have occurred. Coverage for Thibodeaux's judgment is not excluded simply because an excluded cause—the sinkhole—may have contributed to his injuries.[65] Accordingly, the Court finds that the Subsidence Exclusion does not prohibit coverage for Thibodeaux's judgment.

---

[62] *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 773 (Tenn. 2004). *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).
[63] Exhibit 13 to ECF No. 215.
[64] *Id.*
[65] Although *Watts* and its progeny do not specifically address the concurrent cause doctrine in the context of a subsidence exclusion in an insurance policy, other courts outside Tennessee have. For example, in *Dow Chemical Co. v. Royal Indem. Co.*, 635 F.2d 379, 381 (5th Cir. Unit A 1981), the loss at issue resulted from the collapse of a thin-

D. **The Residential Construction Exclusion.**

Rockhill alternatively argues that an exclusion in the Rockhill Policy for residential construction excludes coverage for Thibodeaux's judgment. This provision states that:

> This policy does not apply to any loss, cost or expense, directly or indirectly arising out of or related to the liability of "Contractors" for "Residential Construction."
>
> As used in this exclusion: "Contractors" means all developers, general contractors, subcontractors, trade persons, organizations, or any other person or entity involved in "Residential Construction."
>
> "Residential Construction" means all development, design, building or other construction, improvements, site selection, surface or subsurface site preparation, or any work, products or component parts thereof or services provided in relation to any of the foregoing, involving property intended in whole or in part for residential habitation. "Residential Construction" does not mean your work performed on, or your product used in apartments. Apartments do not include condominiums, town houses, or any multi-family dwelling that has been converted into rental units or rented to others, nor does it include apartment buildings or complexes if they have been converted into condominiums or co-operatives.
>
> Notwithstanding the foregoing, "Residential Construction" does not include "non-structural" repair work which is begun after the date of initial occupancy provided such work is unrelated to or not completing work begun prior to the date of initial occupancy. "Non-structural" repair work includes any "Residential Construction" except that which adds or involves a load bearing portion of any structure or involves any defect that significantly and adversely affects use or utility for residential habitation.[66]

Rockhill argues that this exclusion prohibits coverage because JM Drilling's drilling and excavation work that resulted in the ruptured sewer main and sinkhole occurred in a residential subdivision and that the installation of fiber optic cables for AT&T would ultimately be used to connect additional cables to individual residences.

---

shell concrete dome during the dome's construction. Applying Texas law, the Fifth Circuit held that the collapse was caused by faulty workmanship (a covered risk) rather than subsidence (an excluded risk). *Id.* at 388. However, the court added that there would have been insurance coverage even if subsidence was a contributing cause of the loss: "[f]urther, where a loss occurs through a cause within the coverage of a policy, the coverage is not defeated because an excluded risk contributes to it." *Id.* Although the court was applying Texas law, Tennessee courts often look to case law from other jurisdictions in applying the concurrent cause doctrine. *See, e.g., Watts*, 811 S.W.2d at 887 (citing case law on the concurrent cause doctrine from Louisiana, California, Illinois, Pennsylvania, and Wisconsin).
[66] Exhibit 2 to ECF No. 234.

15

Thibodeaux and JM Drilling contend that the Residential Construction Exclusion does not apply because the accident occurred on a utility lot, which is not "property intended in whole or in part for residential habitation."[67] They also point to evidence in the record that: (1) JM Drilling only performs commercial work;[68] (2) JM Drilling does not perform residential work;[69] (3) JM Drilling did not perform any residential construction at the Sawgrass Subdivision;[70] (4) JM Drilling did not work on any residence at the Sawgrass Subdivision;[71] (5) JM Drilling did not make any connections to any residential structure at the Sawgrass Subdivision;[72] (6) JM Drilling did not perform any work for residential contractors at the Sawgrass Subdivision;[73] (7) JM Drilling did not build any residences in the Sawgrass Subdivision;[74] and (8) the only work performed by JM Drilling at the Sawgrass Subdivision was to lay fiber optic cable to a utility lot, at all times within a servitude or easement.[75] They also point to the affidavit of Charles Henderson, an insurance expert employed by CRC. Mr. Henderson opined that "JM was never a 'Contractor' for 'Residential Construction' as described in the Residential Contracting-Construction Defect Exclusion"[76] because, in part:

> The locus of the accident was an easement in a "utility lot" in a new subdivision, a location where various underground utilities - water, sewer, electric and cable, were closely concentrated. The "utility lot" was not "property intended in whole or in part for residential habitation." Clearly, this was not residential construction as that term is used in the Residential Contracting-Construction Defect Exclusion.[77]

---

[67] ECF No. 296 at 14.
[68] Exhibit 3 to ECF No. 270, deposition of JM Drilling, page 19, lines 4-8.
[69] *Id.*
[70] *Id.* at page 25, line 4 to page 26, line 8.
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] Exhibit 16 to ECF No. 270– Affidavit of Charlie Henderson, paragraph 6(d); Exhibit B to Henderson affidavit, page 34, paragraph B(1)
[77] *Id.*, at paragraph 6(e); Exhibit B to Henderson affidavit, page 34, paragraph B(2).

The Court agrees with Thibodeaux and JM Drilling that the Residential Construction Exclusion does not apply in this case based on the language of the exclusion and the undisputed facts. Rockhill does not dispute that the location of JM Drilling's work that led to Thibodeaux's injuries was an easement over a utility lot where "various underground utilities - water, sewer, electric and cable, were closely concentrated." Rockhill points to no evidence that this lot was "property intended in whole or in part for residential habitation." There is no evidence that the property contained any residential dwellings or that anyone used that property as their dwelling.[78] In sum, the Residential Construction Exclusion does not apply to the accident that caused Thibodeaux's injuries.

### E. Single Occurrence.

Finally, Rockhill argues that Admiral has not exhausted its policy limits because there were multiple "occurrences" that triggered additional liability under the Admiral Policy. As the Rockhill Policy provides excess coverage, liability under that policy would not be triggered until the policy limits under the Admiral Policy have been exhausted. The Admiral Policy and the Rockhill Policy similarly define an "occurrence" as "...an accident..." Rockhill alleges that there were two "occurrences" in this case: JM Drilling negligently damaged the sewer main and then negligently failed to notify the utility company of the damage. Accordingly, Rockhill argues that Admiral should have paid for each occurrence for a total of $2,000,000, rather than $1,000,000. The Court disagrees.

It is undisputed that on June 9, 2015, Mr. Thibodeaux sustained one accident—he fell into a sinkhole. Courts do not look to the number of negligent acts or injuries in determining the number of "occurrences" that might trigger liability under an insurance policy. For example, one Tennessee

---

[78] The plain meaning of habitation is a "dwelling place." "Habitation." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/habitation (accessed July 22, 2021).

court found that there was only one occurrence when the plaintiff suffered 147 bite wounds by seven different dogs during a twenty-minute attack.[79] In *Davis v. Kentucky Farm Bureau Mut. Ins. Co.*,[80] the defendant was insured by a policy with limits of $50,000 per occurrence, with a definition of occurrence similar to that found in the Admiral Policy and Rockhill Policy. Plaintiffs argued that there should be three occurrences since here were three separate acts of negligence by the insured. The court disagreed and stated:

> However, merely because there were multiple negligent acts that combined to cause a single injury or multiple causes of action may be asserted does not mean there were multiple occurrences as that term is unambiguously defined in the Kentucky Farm Bureau policy. There are frequently multiple acts of negligence that cause a single injury. For instance, a negligent driver in a car accident may have been inattentive because he was intoxicated and distracted by his texting and speeding. As a result of the driver's negligence, a collision occurs injuring another person. Under those circumstances, although there were multiple acts of negligence, it cannot be reasonably argued there was more than one accident caused by the driver's negligence.
>
> Under the unambiguous language of the policy, the meaning of "occurrence" in the Kentucky Farm Bureau policy is "accident." There was only one accident.[81]

Courts from other jurisdictions have similarly rejected Rockhill's argument that multiple acts of negligence can be deemed to be multiple "occurrences" under an insurance policy.[82]

The same analysis applies in the instant case. Here, there was only one accident that injured Thibodeaux even though multiple causes—including multiple acts of negligence—may have contributed to that accident. Accordingly, the Court concludes that there was only one

---

[79] *American Modern Select Co. v. Humphrey*, 2012 WL 529576 (E.D. Tenn. 2012).
[80] 495 S.W.3d 159 (Ky.Ct.App. 2016)
[81] *Id.*, at 166-167.
[82] *Fleming v. Air Sunshine, Inc.*, 311 F.3d 282 (3rd Cir. 2002); *Nationwide Mut. Fire Ins. Co., v. Kubacko*, 706 N.E. 2d 17 (Ohio 1997); *Cincinnati Indemnity Co. v. Southwestern Line Constructors*, 422 P.3d 1086 (Az. App.1 2018); *Fellowship of Christian Athletes v. Axis Insurance Co.*, 758 F.3d 982 (8th Cir. 2014); *North American Specialty Ins. v. Royal Surplus Lines*, 541 F.3d 552 (5th Cir. 2008); *Auto-Owners, Inc., Co. v. Munroe*, 614 F.3d 322 (7th Cir. 2010); *Western World Ins. Co. v. Wilkie*, 2007 WL 256947 (E.D. N.C. 2007); *Hollis v. Lexington Ins. Co.*, 180 F.Supp.3d 422 (E.D. Va. 2016).

"occurrence" in the instant case and that Admiral's obligations under its policy have been exhausted.

### III.
#### CONCLUSION

For the foregoing reasons, the Court finds that neither the Subsidence Exclusion nor the Residential Construction Exclusion contained in the Rockhill policy applies to the facts of the instant case and further that the policy limits under the Admiral policy have been exhausted. Accordingly, Rockhill Insurance Company's Combined Cross-Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment on Insurance Coverage [ECF No. 254] is DENIED; and the Motion for Summary Judgment on Insurance Coverage [ECF No. 215] filed by plaintiffs; the Motion for Summary Judgment on Insurance Coverage [ECF No. 234] filed by JM Drilling; the Insight Risk Management, LLC's Motion for Partial Summary Judgment on Insurance Coverage [ECF No. 251]; and CRC Insurance Services, Inc's Motion for Summary Judgment on Issue of Insurance Coverage [ECF No. 270] are each GRANTED.

THUS DONE in Chambers on this 23rd day of July, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE